Michael O. SMITH, Plaintiff and Appellant,

v.

Gerald L. COOK, Warden, Utah State Prison; David R. Wilkinson, Utah State Attorney General, Defendants and Appellees.

No. 890241.

Supreme Court of Utah.

Nov. 29, 1990.

Anne Milne, M. David Eckersley, Salt Lake City, for plaintiff and appellant.

R. Paul Van Dam, C. Dane Nolan, Salt Lake City, for defendants and appellees.

HALL, Chief Justice:

This is an appeal from the denial of a petition for a writ of habeas corpus.

On June 23, 1981, plaintiff Michael O. Smith was convicted of forcible sodomy upon a child,[1] a first degree felony, and was sentenced to a prison term of five years to life. Formal judgment was entered against Smith on July 10, 1981, at which time his prison sentence was suspended subject to successful completion of three years' probation. Three months prior to the completion of his probation, Smith was again arrested and charged with two counts of sexual abuse of a child and sodomy upon a child. In connection with these charges, on May 15, 1984, an incident report and affidavit to show cause why Smith's 1981 probation should not be revoked or modified was filed in the third district court. On June 21, 1984, two days prior to the expiration of his probation, Smith pleaded guilty to two counts of attempted forcible sexual abuse of a child,[2] two third degree felonies,[3] and was subsequently sentenced to two consecutive prison terms of zero to five years.

On December 12, 1984, after the expiration of Smith's original probation term, Judge David Dee of the third district court ordered him to show cause why his original probation should not be revoked or modified. A hearing was held pursuant to this order on December 14, 1984. Smith appeared personally at the hearing and was represented by counsel. At the conclusion of the hearing, Judge Dee ruled that Smith had violated his 1981 probation and imposed Smith's initial sentence of five years to life. No appeal was taken from that hearing.

On June 22, 1987, approximately two and one-half years after the 1984 revocation hearing, Smith filed a petition for a writ of habeas corpus contesting the legality of his commitment pursuant to the sentence imposed at the 1984 revocation hearing. An amended petition was filed on April 20, 1988. In his petition, Smith claimed that he was denied due process of law for lack of effective assistance of counsel at his revocation hearing and that the district court lacked the jurisdiction to revoke his probation because his probation period had terminated. Defendant Gerald R. Cook moved for a judgment on the pleadings on the grounds that the petition was barred by the applicable statute of limitations[4] and that Smith had failed to allege facts which dem-

---

1. Utah Code Ann. § 76–5–403 (Supp.1981).

2. Utah Code Ann. § 76–5–404 (Supp.1984).

3. Utah Code Ann. § 76–4–102 (Supp.1984).

4. Utah Code Ann. § 78–12–31.1 (Supp.1987).

onstrated that (1) due process was violated in connection with Smith's revocation hearing, and (2) an error at the hearing would have warranted an appeal of the order revoking probation. On May 10, 1989, the trial judge granted judgment on the pleadings for the reasons presented by Cook.

Two general issues are presented on this appeal. The threshold issue is whether Smith's two- and one-half-year delay in challenging the 1984 revocation hearing bars his petition for habeas corpus in light of Utah's three-month statute of limitations on habeas corpus petitions.[5] If the petition is not barred, a second issue arises: whether the trial court was correct in dismissing Smith's petition on the pleadings. There is no dispute as to the underlying facts in this case. Rather, Smith argues that the trial court erred in its application of the law. We accord conclusions of law no particular deference but review them for correctness.[6]

## I. STATUTE OF LIMITATIONS

Defendants contend that Smith's petition for habeas corpus is barred by Utah Code Ann. § 78–12–31.1 (Supp.1987). Section 78–12–31.1 reads: "Within three months: For relief pursuant to a writ of habeas corpus. This limitation shall apply not only to grounds known to petitioner but also to grounds which in the exercise of reasonable diligence should be known by petitioner or counsel for petitioner." Defendants argue that both of the grounds Smith raises in his petition are based on facts and law that Smith should have been aware of at the time of, or shortly after, his 1984 revocation hearing. Therefore, Smith's two- and one-half-year delay in filing his petition bars his petition for habeas corpus.

In asserting that section 78–12–31.1 should not apply in his case, Smith does not claim that prior to the filing of his petition he was unaware of the grounds underlying his claims of error. Rather, he argues that (1) prior to 1987, any statute of limitations which would otherwise run against an individual was tolled during the time in which that person was incarcerated, and (2) any attempt by the legislature to limit the time in which a void judgment could be attacked would violate article I, section 11 of the Utah Constitution.

Smith's claim that the statute of limitations for habeas corpus actions had been tolled is based on Utah Code Ann. § 78–12–36 (Supp.1977). Section 78–12–36, prior to being amended in 1987,[7] read in pertinent part:

> If a person entitled to bring an action ... is at the time the cause of action accrued either ... imprisoned on a criminal charge, or in execution under the sentence of a criminal court, ... the time of the disability is not part of the time limited for the commencement of an action.

Defendants argue that section 78–12–36 should not apply because Smith was never actually disabled as a result of his imprisonment. Defendants further claim that the legal disability of incarceration should not apply to a habeas corpus action which is predicated on the fact that the plaintiff is incarcerated.

The contention that Smith is not entitled to the protection of section 78–12–36 because he has not suffered any actual disability is contrary to the language of section 78–12–36. Section 78–12–36 makes no mention of a showing of an actual disability but clearly states that a statute of limitation should not run against a person who "is at the time the cause of action accrued either ... imprisoned on a criminal charge, or in execution under the sentence of a criminal court."[8] Therefore, Smith did not need to allege that he suffered any

---

5. Utah Code Ann. § 78–12–31.1 (Supp.1987).

6. *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985).

7. The 1987 amendments to section 78–12–36 deleted the section which referred to the imprison-

ment as a disability. The amendments did not become effective, however, until April 27, 1987. *See* 1987 Laws of Utah ch. 19, § 6.

8. Utah Code Ann. § 78–12–36 (1987).

particular disability as a result of his imprisonment.

■ Defendants' second argument, that the disability of incarceration should not apply to habeas corpus actions predicated on the fact that the petitioner is incarcerated,[9] is also contrary to the clear language of section 78–12–36. Furthermore, any ambiguity that may exist in sections 78–12–36 and 78–12–31.1 should be resolved in favor of a criminal defendant.[10] We therefore hold that plaintiff's habeas corpus petition was not barred by section 78–12–31.1. Since we have resolved this issue on statutory grounds, we will not reach Smith's constitutional arguments.[11]

## II. TERMINATION OF PROBATION

Smith's first claim of error is that the trial court lacked jurisdiction to revoke his probation. Smith bases this claim on two alternative theories: (1) Utah Code Ann. § 77–18–1(10)(a) (Supp.1984), which limits

9. In a limited number of situations, the writ of habeas corpus may be available where no one is actually incarcerated. *See* 39 Am.Jur.2d *Habeas Corpus* §§ 91, 92 (1968).

10. *See generally Shelmidine v. Jones,* 550 P.2d 207, 211–12 (Utah 1976); *State v. Tapp,* 26 Utah 2d 392, 490 P.2d 334, 336 n. 6 (1971).

11. *See State v. Wareham,* 772 P.2d 960, 966 (Utah 1989); *Greaves v. State,* 528 P.2d 805, 806–07 (Utah 1974). Smith had argued that section 78–12–31.1 violated Utah Constitution article I, section 11.

12. *State v. Green,* 757 P.2d 462, 464 (Utah 1988); *see also State v. Cowdell,* 626 P.2d 487, 488 (Utah 1981).

13. *See State v. Green,* 757 P.2d at 464; *State v. Cowdell,* 626 P.2d at 488.

14. At the time Smith was placed on probation, the applicable statute, Utah Code Ann. § 77–18–1 (Supp.1981), read in pertinent part:

(1) On a plea of guilty or no contest or conviction of any crime or offense, if it appears compatible with the public interest, the court may suspend the imposition or execution of sentence and place the defendant on probation for such period of time as it determines....

....

(4) After hearing, the Court may increase or decrease the probation period and may

the time a court may place a person on probation to eighteen months, was applicable to Smith at the time of his revocation hearing, and (2) under the express terms of his probation order, his probation terminated prior to the time the court obtained jurisdiction.

### A. Applicable Statute

■ The trial court's power to grant, modify, or revoke probation is purely statutory, and although a trial court has discretion in these matters, the court's discretion must be exercised within the limits imposed by the legislature.[12] In the past, we have held that a trial court lacks jurisdiction to revoke probation when it acts outside the scope of its legislative authority.[13] At the time Smith was placed on probation, Utah's probation statute, Utah Code Ann. § 77–18–1 (Supp.1984), did not limit the length of time a person convicted of a felony could be placed on probation.[14] Pri-

revoke or modify any condition of probation....

(5)(a) Probation may not be revoked except upon a hearing in court and a finding that the conditions of probation have been violated.

(b) Upon the filing of an affidavit alleging with particularity facts asserted to constitute violation of the conditions of probation, the court which authorizes probation shall determine whether the affidavit establishes probable cause to believe that revocation or modification of probation may be justified. If the court determines that there is probable cause, it shall cause to be served on the defendant a copy of the affidavit and an order to show cause why his probation should not be revoked or modified.

(c) The order to show cause shall specify a time and place for the hearing, which shall be within seven days of the service upon the defendant unless he shows good cause for a continuance, and shall inform the defendant of a right to be represented by counsel at the hearing and to have counsel appointed for him if he is indigent. The order shall also inform the defendant of a right to present evidence as provided in the Utah Rules of Civil Procedure.

....

(e) After hearing, the Court shall make findings of fact. Upon determining that the defendant violated the conditions of probation, the court may order the probation revoked, modified or continued. If probation is revoked ... the sentence previously imposed shall be executed.

or to Smith's revocation hearing, however, the legislature amended section 77–18–1, limiting the time a person convicted of a felony can be placed on probation to eighteen months.[15] Smith claims that even though he was placed on probation under the 1981 statute, the 1984 statute should apply to his case because it was in effect at the time of his revocation hearing. We disagree with this contention and hold that the 1984 statute does not apply to this case.

■■ Initially, it should be noted that under traditional statutory analysis, the 1984 amendments should not apply retroactively. Utah Code Ann. § 68–3–3 (Supp. 1984) provides that "no part of these revised statutes is retroactive, unless expressly so declared." The amendments to section 77–18–1 did not expressly state that they should be applied retroactively.[16] There is, however, an exception to the rule of non-retroactivity, set out in section 68–3–3, for statutes that are procedural or remedial in nature.[17] A statute is considered procedural or remedial, as opposed to substantive, if the statute does not enlarge, eliminate, or destroy vested rights.[18] The amendment in question, section 77–18–1(10)(a) (Supp.1984), limits the time a person can be placed on probation, thereby enlarging the rights of an individual who is placed on probation. The amendment is therefore substantive and, pursuant to section 68–3–3, should not apply retroactively.

Plaintiff contends, however, that there are additional considerations involved with amendments that lessen the penalty for criminal offenses. He cites a line of cases which hold that when a statute is amended to lessen the penalty for a criminal offense, a person convicted of the offense is entitled to the lesser penalty if the amendment becomes effective prior to the time the person is sentenced.[19] He argues that this rule supports the contention that individuals who are placed on probation are entitled to the benefit of any statutory amendments that become effective prior to their revocation hearings. His reliance on these cases, however, is misplaced.

■ The rule set out in the cases cited by plaintiff is applicable only to situations in which the amendment that lessens the criminal penalty becomes effective prior to the time a criminal defendant is sentenced.[20] We have consistently held that in such situations, "the law in force at the time of *sentencing* govern[s] and ... that an amendment to [a] statute passed after sentence has no effect on the matter."[21] This approach is based on Utah Code Ann. § 68–3–5 (Supp.1984), which states, "[The]

---

**15.** Utah Code Ann. § 77–18–1(10)(a) (Supp. 1984) reads: "Upon completion without violation of 18 months' probation in felony or class A misdemeanor cases, or six months in class B misdemeanor cases, the offender shall be terminated from sentence and the supervision of the Division of Corrections, unless the person is earlier terminated by the court." In 1989, the Utah legislature again amended section 77–18–1 to allow a probationary period of thirty-six months. *See* Utah Code Ann. § 77–18–1(7)(a) (Supp.1989).

**16.** *See* Utah Code Ann. § 77–18–1 (Supp.1984).

**17.** *See State v. Norton*, 675 P.2d 577, 585 (Utah 1983) (overruled on different grounds by *State v. Hansen*, 734 P.2d 421, 427 (Utah 1986)). In *Norton*, the court held that an amendment to Utah Code Ann. § 76–3–207(4) which established new procedures to be followed when an appellate court holds that errors had been committed in the sentencing procedure in a capital case was purely procedural in nature and therefore should be applied retroactively.

**18.** *See State v. Norton*, 675 P.2d at 585; *Department of Social Servs. v. Higgs*, 656 P.2d 998, 1000 (Utah 1982).

**19.** *See Shelmidine v. Jones*, 550 P.2d 207, 211–12 (Utah 1976); *State v. Tapp*, 26 Utah 2d 392, 490 P.2d 334, 335–36 (1971); *Belt v. Turner*, 25 Utah 2d 380, 483 P.2d 425, 425–26 (1971).

**20.** If, however, an amendment which increases the punishment for a criminal offense becomes effective prior to sentencing but after the offense was committed, the statute in effect at the time the offense was committed will govern to avoid constitutional questions concerning the ex post facto clause of the United States Constitution or the Utah Constitution. *See Belt v. Turner*, 483 P.2d at 426; U.S. Const. art. I., § 9; Utah Const. art. I., § 18.

**21.** *Harris v. Smith*, 541 P.2d 343, 344 (Utah 1975) (emphasis in original); *see also State v. Tapp*, 490 P.2d at 336; *Belt v. Turner*, 483 P.2d at 426; *State v. Miller*, 24 Utah 2d 1, 464 P.2d 844, 846 (1970).

repeal of a statute does not revive a statute previously repealed, or affect any right which has accrued, any duty imposed, any penalty incurred, or any action or proceeding commenced under or by virtue of the statute repealed." When a person has been sentenced under a statute, that person has incurred a penalty under the statute; therefore, pursuant to section 68–3–5, any amendment to the statute that becomes effective after a sentence has been imposed has no effect on that sentence.

▮▮▮ In the instant case, in 1981, plaintiff was convicted and sentenced, and pursuant to section 77–18–1(1) (Supp.1981), his sentence was suspended and he was placed on probation. The fact that he was placed on probation does not affect the fact that in 1981 he had "incurred a punishment" within the meaning of section 63–3–5. The term "punishment" in section 63–3–5 should be interpreted in accord with its usual and accepted meaning.[22] This being the case, it is unnecessary to determine whether a person who has been placed on probation incurs the punishment set out in the sentence prior to the time probation is revoked, because it is clear that simply by being placed on probation, punishment is incurred. The general nature of probation places significant restrictions on the liberty of the person placed on probation.[23] The penal quality of probation is also clear from section 77–18–1(4) (Supp.1981), which states that as a condition of probation the trial court can impose fines, require restitution, and impose jail sentences. When Smith was placed on probation on terms that were consistent with section 77–18–1 (Supp.1981), he incurred a punishment; therefore, under the terms of section 63–3–5 and the cases cited by Smith, any subsequent amendment to section 77–18–1 would have no effect on the terms of his probation.

Thus, the trial court was correct in refusing to apply section 77–18–1 (Supp.1984) in the instant case and in holding that Smith's probation had not automatically terminated after he spent eighteen months on probation without a probation violation.

## B. Court's Authority

▮▮▮ Plaintiff's second argument is that the district court had no authority to revoke his probation because, by the express terms of his probation order, his probation terminated prior to the time revocation proceedings were initiated. We agree with this contention and hold that under the statute applicable to Smith's case, the trial court lacked the authority to revoke Smith's probation because Smith was not given notice of the revocation proceedings prior to the expiration of his probation.

Plaintiff's argument is based on our decision in *State v. Green*,[24] where we held that, pursuant to section 77–18–1 (Supp. 1984), a trial court lacks the authority to revoke probation after the expiration of a statutorily imposed eighteen-month probation period even if the violation occurred during the probation period.[25]

A related issue is now before this court: whether probation can be revoked when the revocation proceeding had been arguably initiated but not completed before the expiration of a judicially imposed probation period. Although *Green* involved a defendant who was placed on probation pursuant to section 77–18–1 (Supp.1984) and the decision was based in part on the language of the 1984 statute, the holding in *Green* is applicable to the instant case. In *Green*, we rejected an interpretation of section 77–18–1 (Supp.1984) that would allow for a tolling of the probation period after the commission of a probation violation. In doing so, we reasoned that such an interpretation would be improper because it would place individuals who have been placed on probation "in a perpetual state of limbo; although their probation would appear to have terminated ... [the] defendants would actually be subject to a contin-

---

22. *Utah County v. Orem City*, 699 P.2d 707, 709 (Utah 1985).

23. *See State v. Cowdell*, 626 P.2d at 489.

24. 757 P.2d 462 (Utah 1988).

25. *Id.* at 464–65.

ued term of fictional supervision." [26] The court found support for this contention in our case law decided prior to the enactment of section 77–18–1 (Supp.1984).[27]

Nothing in section 77–18–1 (Supp.1981) is contrary to the position asserted in *Green.* It is true that section 77–18–1 (Supp.1981), unlike section 77–18–1 (Supp.1984), does not include language stating that probation will "terminate" after a certain period. However, section 77–18–1(4) (Supp.1981) states that the district courts do not have the authority to extend a period of probation without a hearing conducted pursuant to the procedures set out in section 77–18–1(5) (Supp.1981).[28] This language is consistent with the assertion that without such a hearing, the trial court does not have the authority to extend the period of supervision beyond the original period of probation.

Defendants, however, contend that the instant case is distinguishable from *Green* in that Smith's revocation proceedings were initiated during his period of probation. In *Green,* we expressly reserved the question of whether the trial court retains its authority to revoke probation in situations where the revocation proceedings are initiated but not completed within the probation period.[29] There are jurisdictions where it is necessary to complete the revocation process within the probationary period in order for the trial court to retain its authority to

revoke an individual's probation.[30] The jurisdictions which follow that rule, however, do so largely as a matter of statutory construction.[31] There is nothing in the Utah statute, section 77–18–1 (Supp.1981), which compels the conclusion that the revocation proceedings must be completed, as opposed to initiated, within the probation period.[32] Furthermore, as discussed below, the concerns over the extension of the period of supervision which were relied on in *Green* are not implicated in a situation where the revocation proceedings are properly initiated. Without any statutory or policy considerations to the contrary, we see no reason to limit a trial court's authority to revoke or modify probation.

This conclusion leads to a second issue: which stage in the revocation proceedings must be reached within the period of probation for the court to retain its authority over probationers beyond the probation period. A review of the relevant statutes and case law leads us to the conclusion that in order for a court to retain its authority over a probationer who is not actively evading supervision, the probationer must be served with the order to show cause within the period of probation.

■ The jurisdictions that have considered this issue have not followed a uniform approach.[33] Rather, the positions taken by the various states are largely dependent on each state's individual proba-

**26.** *Id.* at 464.

**27.** *Id.* (citing *In re Flint,* 25 Utah 338, 71 P. 531 (1903)).

**28.** *See supra* note 12.

**29.** *State v. Green,* at 465 n. 3.

**30.** *See State v. Jones,* 285 So.2d 231, 233–34 (La.1973); *In re Griffin,* 67 Cal.2d 343, 431 P.2d 625, 627, 62 Cal.Rptr. 1 (1967); *Brooker v. State,* 207 So.2d 478 (Fla.Ct.App.1968). In *Green,* we noted that other jurisdictions that have addressed this problem have followed one of three approaches: probation may be revoked if revocation proceedings are (1) initiated within a reasonable time after the probation period, (2) initiated within the probation period, or (3) completed within the revocation period. We went on to state, "None of these approaches has been used by a clear majority of jurisdictions, and each appears to be largely a function of the

statutory language of each state." *State v. Green,* 757 P,2d at 465.

**31.** *See State v. Jones,* 285 So.2d at 233–34; *In re Griffin,* 431 P.2d at 627; *Brooker v. State,* 207 So.2d at 480.

**32.** *See supra* note 12.

**33.** Some jurisdictions hold that a court retains its authority over probationers if a report of a probation violation is filed with the court within the probation period, *see Barthiume v. State,* 549 P.2d 366, 367 (Okla.Crim.App.1976); others hold that it is necessary for the court to issue an order to show cause or an arrest warrant, *see State v. O'Neal,* 24 Or.App. 423, 545 P.2d 910, 911 (Or.Ct.App.1976); and other jurisdictions hold that the warrant needs to be executed before the court can retain its authority to revoke probation past the probation period, *see State v. Jones,* 285 So.2d 231, 233–34 (La.1973).

tion statute.[31] The Utah statute, section 77–18–1 (Supp.1981), does not explicitly deal with this issue. However, section 77–18–1 (Supp.1981) does place a significant amount of emphasis on the nature and degree of notice to which an individual is entitled prior to a revocation hearing. Section 77–18–1(5)(b) and (c) (Supp.1981) not only states that a court "shall cause to be served on the defendant a copy of the affidavit and order to show cause," but also provides that the order to show cause shall inform the defendant of the nature of the accusations against him, his right to counsel, and his right to present evidence.[35] The emphasis on notice in section 77–18–1 (Supp.1981) is consistent with the assertion that a court retains the authority to revoke probation if the probationer is served with notice of the revocation proceedings within the probation period.

The assertion that a probationer is entitled to notice within the period of probation in order for the court to retain the authority to revoke probation is consistent with the rationale underlying our decision in *Green.* If probationers are given notice within the probation period, there is no danger of placing them "in a state of perpetual limbo[, where] although their probation would appear to have terminated ... defendants would actually be subject to a continued term of fictional supervision."[36] Under such an approach, all parties concerned would be aware of the proceedings and the allegations underlying the proceedings at the time the probation terminates. Probationers could also be assured that no new proceedings or proceedings under different grounds could be brought against them once the probation period has ended.[37] Therefore, probationers would not be in a state of limbo where it would appear that their probation had terminated but where

further proceedings could be brought against them. However, if a trial court was able to retain the authority to revoke probation without giving notice to the probationer, there may be situations in which it could appear that the probation had ended when in fact the court may, at some later date, reassert its jurisdiction over the defendant for the purpose of revoking probation.

Such an approach is also in accord with the decisions of this court, as well as the United States Supreme Court, holding that the guarantees of the fundamental fairness embodied in the due process clause of the United States Constitution entitle probationers to written notice of the accusations against them prior to their revocation hearings.[38] This approach is also consistent with the general rule that in order for a court to obtain jurisdiction over a civil defendant, the defendant must be properly served in the manner required by law.[39] Moreover, there should be no practical problem with serving probationers because, due to the nature of probation, they are already under the supervision of the state. A different rule may need to be followed in some situations, such as where the probationer is actively avoiding service or is evading the supervision of the probation authorities or when the violation is committed so close to the termination of probation that it would be impractical or impossible for the probationer to receive notice within the period of probation. This question, however, is not presently before the court; therefore, we do not reach this issue. We hold that in situations where the probationer is not actively avoiding supervision, in order for a trial court to retain its authority over the probationer beyond the period of probation, the probationer must be

---

**34.** See *State v. O'Neal,* 545 P.2d at 911; *State v. Jones,* 285 So.2d at 233–34.

**35.** See *supra* note 12.

**36.** *State v. Green,* 757 P.2d at 464.

**37.** See *State v. Cowdell,* 626 P.2d at 487–89 (holding that a court cannot revoke probation on grounds different than those in the order to show cause).

**38.** *Gagon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 1761–62, 36 L.Ed.2d 656 (1973); *State v. Cowdell,* 626 P.2d at 488.

**39.** See *Carlson v. Bos,* 740 P.2d 1269, 1271 (Utah 1987); *Bawden & Assoc. v. Smith,* 624 P.2d 676, 677 (Utah 1981); 20 Am.Jur.2d *Courts* § 143, 144 (1965).

served with an order to show cause within the probationary period.[10]

It is undisputed that plaintiff was not given notice of the revocation proceedings within his probation period. Furthermore, it has not been claimed that he was avoiding the supervision of probation authorities. The trial court, therefore, did not have authority to revoke Smith's probation. Since we find for Smith on his first claim, we will not reach his other arguments.

This case is remanded to the trial court with the direction to grant plaintiff's petition for habeas corpus.

HOWE, Associate C.J., and ORME, Court of Appeals Judge, concur.

ZIMMERMAN, Justice (concurring in the result in part and dissenting in part).

I concur in the result in part I of the Chief Justice's opinion because I do not think the legislature can validly impose a three-month limitation period on habeas corpus actions. *See* Utah Const. art. I, §§ 5, 11; *see also Condemarin v. University Hosp.*, 775 P.2d 348, 366–69 (Utah 1989) (Zimmerman, J., concurring in part); *Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 675 (Utah 1985). I dissent, however, from part IIA. Since a majority of the court joins the Chief Justice on part IIA, I agree that plaintiff Smith is entitled to the writ on the ground set forth in part IIB of the Chief Justice's opinion.

Section 77–18–1(10)(a) provided, "Upon completion without violation of 18 months probation in felony ... cases, ... the offender shall be terminated from [probation]." Utah Code Ann. § 77–18–1(10)(a) (Supp.1984) (current version at Utah Code Ann. § 77–18–1(7)(a) (1990)). The Chief Justice avoids applying this provision to Smith by reasoning that to give Smith the benefit of the section would be to apply it retroactively, back to the date of his initial

sentencing. I cannot agree that any retroactive application is necessary. On the date section 77–18–1(10)(a) became effective, long before Smith's probation revocation proceeding was initiated, Smith had served well over eighteen months without violation. By its plain terms, the statute operated to end his probation, and the probation of all other similarly situated probationers, forthwith. The statute stated that "[u]pon completion without violation of 18 months' probation," the offender's probation is to be terminated. Utah Code Ann. § 77–18–1(10)(a) (Supp.1984). There is no reference here to when the probationer was sentenced. It simply cuts off all probations after a fixed period if they have served the requisite period of time without violation.

The Chief Justice's opinion may keep more people subject to parole revocation, but to reach that end, the majority has had to ignore both legislative intent and equity. First, the interpretation given the statute appears contrary to the legislature's purpose in enacting it. We are informed that the legislature passed this section as a cost-saving measure for the purpose of relieving the Department of Corrections of the burden of continuing to provide parole supervision for those who have been trouble-free for eighteen months. There is nothing in the statute to indicate that the legislature thought this cost-saving statute would operate only on those convicts put on probation from the effective date of the statute forward. In fact, its language suggests the contrary.

Second, the Chief Justice's interpretation creates a disparity in treatment of probationers that seems irrational. Persons put on probation immediately before section 77–18–1(10)(a)'s passage may remain on probation for years, subject to revocation for infractions of the conditions of their probation. On the other hand, those convicted of the same crimes immediately af-

---

**40.** The holding in this case is applicable to probationers who have been placed on probation under section 77–18–1 (Supp.1981). Subsequent amendments to section 77–18–1 may affect the authority of the trial court to revoke probation after the probation period has terminated. The present probation statute, section 77–18–1(8)(b)

(Supp.1990), for instance, reads, "The running of the probation period is tolled upon the filing of a violation report with the court alleging a violation of the terms and conditions of probation or upon the issuance of an order to show cause or warrant by the court."

ter the statute's passage need behave for only eighteen months to escape probation. Yet they are no less or no more dangerous to the public than those still on probation, in the eyes of either the public or the judges who sentenced them. I would not interpret this statute to create such an anomaly.

STEWART, J., concurs in the concurring and dissenting opinion of ZIMMERMAN, J.

DURHAM, J., having disqualified herself, does not participate herein; ORME, Court of Appeals Judge, sat.