**STATE of Utah, Plaintiff and Appellee,**

v.

**Scott L. GRATE, Defendant and Appellant.**

**No. 970083–CA.**

Court of Appeals of Utah.

Oct. 30, 1997.

---

Margaret P. Lindsay, Provo, for Defendant and Appellant.

Jan Graham and James H. Beadles, Salt Lake City, for Plaintiff and Appellee.

Before DAVIS, P.J., and BILLINGS and GREENWOOD, JJ.

GREENWOOD, Judge:

Appellant, Scott L. Grate (Grate), appeals the denial of his 1996 Motion to Correct an Illegal Sentence, claiming that the trial court lacked jurisdiction to revoke his probation under Utah Code Ann. § 77–18–1(8)(a) (Supp.1988). We reverse.

## BACKGROUND

The pertinent facts in this case are undisputed. On December 19, 1986, Grate pleaded guilty to one charge of theft, a second degree felony. On January 16, 1987, Grate received a suspended sentence of one to fifteen years and was placed on eighteen months probation.

On June 12, 1987, Adult Probation & Parole (AP & P) filed an Incident Report with the trial court, alleging Grate had violated his probation by being arrested for auto burglary, by failing to report for the month of June 1987, and by moving/changing addresses without notifying AP & P. Based largely on the Report, the court issued a bench warrant for Grate on July 2, 1987.

Grate was arrested pursuant to the warrant on July 8, 1987, when he voluntarily appeared at the AP & P office. After a hearing on the warrant held July 10, 1987, Grate was released on his own recognizance. The trial court then granted AP & P a continuance to prepare an affidavit in support of an order to show cause (OSC) why Grate's probation should not be revoked.

Grate's eighteen-month probation period was due to terminate on July 15, 1988. However, AP & P did not file its affidavit in support of an OSC until July 21, 1988, and Grate was not served with the OSC until August 9, 1988. At the probation revocation hearing that followed on August 12, 1988, Grate admitted commission of the auto burglary as well as two new probation violations. The court revoked Grate's probation and sentenced him to a term of one to fifteen years.

In December 1995, Grate filed a Motion to Correct an Illegal Sentence, claiming the trial court had lacked jurisdiction to revoke his probation after July 15, 1988. The trial court denied Grate's motion, holding that under Utah Code Ann. § 77–18–1(11)(b) (1996) (as amended in 1989), the filing of the Incident Report on June 12, 1987, had tolled the running of Grate's probation until the OSC was signed on July 19, 1988. The court rejected Grate's claim that the tolling of the probation period without notice to him had violated his due process rights.

In November 1996, Grate filed a second Motion to Correct an Illegal Sentence, asking the court to review its jurisdiction under the statutory provisions applicable in 1988 rather than those applicable in 1996. The trial court again denied Grate's motion, holding that the filing of the Incident Report while Grate was still on probation constituted the "charge" necessary to toll probation under the 1988 statute, Utah Code Ann. § 77–18–1(8)(a) (Supp.1988).[1] This appeal followed.

## ISSUES

On appeal, Grate argues that the trial court lacked jurisdiction to revoke his probation on August 12, 1988, because his probation period had expired as a matter of law on July 15, 1988. Grate argues that neither the filing of an incident report with the trial court on June 12, 1987, nor Grate's arrest pursuant to the bench warrant issued on July 2, 1987, constituted a "charge" under Utah Code Ann. § 77–18–1(8)(a) sufficient to toll the expiration of his probation term.

## ANALYSIS

Grate argues that the trial court lacked jurisdiction to revoke his probation after July 15, 1988, because AP & P failed to charge him with a probation violation within his original probation term, as required under Utah Code Ann. § 77–18–1(8)(a) (Supp.1988). Section 77–18–1(8)(a) provides:

> All time served without violation while on probation applies to service of the total term of probation but does not eliminate the requirement of serving 18 consecutive months without violation in felony or class A misdemeanor cases, or six consecutive months without violation in class B misdemeanor cases. Any time served by a probationer outside of confinement *after having been charged with a probation violation* and prior to a hearing to revoke probation does not constitute service of time toward the total probation term unless the probationer is exonerated at a hearing to revoke the probation.

Utah Code Ann. § 77–18–1(8)(a) (Supp.1988) (emphasis added).[2]

---

1. Both Grate and the State argue that the 1988 version of section 77–18–1 applies in this case, even though a different version of the statute was in effect at the time of Grate's original sentencing. We assume, without deciding, that the parties are correct in this conclusion and thus analyze this matter under the 1988 version of the statute.

2. Section 77–18–1(8)(b) of the 1988 statute provides that "[w]hen any probationer, without authority from the court or the Department of Corrections, absents himself from the state, or avoids or evades probation supervision, the period of absence, avoidance, or evasion tolls the probation period." Utah Code Ann. § 77–18–1(8)(b) (Supp.1988). Because the State has not alleged that Grate either absented himself without authority or avoided or evaded probation supervision, we do not address the application of that provision to this case.

 "Whether the trial court had the authority to extend [or revoke] defendant's probation is a question of law. '[W]e accord a trial court's conclusions of law no particular deference, reviewing them for correctness.'" *State v. Rawlings*, 893 P.2d 1063, 1066–67 (Utah.Ct.App.1995) (quoting *State v. Wilcox*, 808 P.2d 1028, 1031 (Utah 1991)). Also, "[b]ecause the interpretation of a statute presents a question of law, we review for correctness." *State v. Amador*, 804 P.2d 1233, 1234 (Utah.Ct.App.1990) (citation omitted).

### *Meaning of "charged" in Section 77–18–1(8)(a)*

In order to determine whether the trial court had jurisdiction to revoke Grate's probation, this court must determine the meaning of "charged" within section 77–18–1(8)(a). Specifically, this court must determine whether that term is sufficiently broad to include either the filing of an incident report with the trial court or the issuance of an arrest warrant pursuant to that report, as the State contends, or whether the term is limited in scope to require formal service upon a probationer of notice of an alleged violation and the need to prepare a defense, as urged by appellant. In determining the meaning of "charged," we employ primarily the traditional rules of statutory construction, drawing on relevant case law from this and other jurisdictions to assist us, as needed, in our analysis.

### 1. Statutory interpretation and ordinary meaning

 Under traditional rules of statutory construction, "'a statutory term should be interpreted and applied according to its usually accepted meaning, where the ordinary meaning of the term results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction of the express purpose of the statute.'" *Bonneville Int'l Corp. v. State Tax Comm'n*, 858 P.2d 1045, 1048 (Utah.Ct.App.1993) (internal brackets omitted) (quoting *Morton Int'l, Inc. v. State Tax Comm'n*, 814 P.2d 581, 590 (Utah 1991)). Furthermore, "[u]nambiguous language in [a] statute may not be interpret-

ed to contradict its plain meaning." *Id.* (internal quotation marks and citations omitted).

*Black's Law Dictionary* defines "charged" to include an "[a]ccusation of crime by complaint, indictment, or information." *Black's Law Dictionary* 233 (6th ed.1990). It defines the verb, "charge," to include "to accuse," and, within the context of criminal law, to mean "to indict or formally accuse." *Id.* at 232. Finally, it defines "accuse" as "[t]o bring a formal charge against a person, to the effect that he is guilty of a crime or punishable offense, before a court or magistrate having jurisdiction to inquire into the alleged crime." *Id.* at 22–23.

 Although Utah courts have not yet defined the term "charged," cases from other jurisdictions support the commonsense conclusion that being "charged" means being served notice of both the alleged offense and the necessity to appear before a tribunal to defend oneself. *See Ahmaogak v. State*, 595 P.2d 985, 988–89 (Alaska 1979) ("We ... hold that when a citation is served which gives a person official notice that he or she is accused of a crime *and is summoned to appear in court* to answer for such crime upon penalty of fine and/or imprisonment, the citation is a charge within the meaning of Criminal Rule 45(c)(1) which triggers the 120 day [speedy trial] period." (emphasis added)); *Clark v. State*, 579 So.2d 109, 110–11 (Fla. 1991) (holding "[b]efore probation ... may be enhanced, either by extension of the period or by addition of terms, a violation of probation ... must be formally charged and the probationer must be brought before the court and advised of the charge").

In *Bermen v. State*, 798 S.W.2d 8, 9 (Tex. Ct.App.1990), the court discussed the definition of "charged with" within the context of a statute criminalizing escape from custody when a person is "under arrest for, charged with, or convicted of an offense." In that case, the defendant had been arrested but no formal complaint had yet been filed against him when he escaped. The court noted that the term "charged" "is frequently used in a limited sense, as referring to a formal complaint, information, or indictment ... and in common parlance it signifies the formal com-

mencement of a criminal proceeding by the filing or returning of the accusatory paper in the regular course of judicial proceedings." *Id.* at 10 (citation omitted). The court then examined other provisions of the state's code of criminal procedure, noting that "complaint," "indictment," and "information" all require charging a defendant with a particular offense; an arrest, by contrast, signifies only that defendant has been "placed under restraint or taken into custody." *Id.* The court concluded that "a person is not *charged* with an offense until the filing of a complaint or the return of an indictment by a grand jury." *Id.*[3] In both cases, the defendant receives notice not only of the allegations against him or her but also of the state's institution of judicial proceedings in which the defendant is expected to appear. It is the combination of notice of both these elements that constitutes a "charge."

Under Utah law, it is the notice to a person of the commencement of a judicial enforcement action that distinguishes the filing of an information in a criminal proceeding or the issuance of an OSC in a probation setting, from the filing of an incident report. In each of the former instances, there is no ambiguity as to the State's intention to enforce its rights within a judicial proceeding or the defendant's need to prepare a defense. Furthermore, all the procedural strictures which attach to a court proceeding are activated.

In contrast, the filing of an incident report does not commence a probation revocation proceeding. *See* Utah Code Ann. § 64–13–29(1) (1987). Such report need not be served on the probationer, nor does the filing necessarily activate any court proceeding or require the probationer to respond. *See id.* Indeed, a probationer may never learn about

the filing of such a report. Similarly, an arrest pursuant to a bench warrant issued in connection with such report in no way initiates a revocation proceeding. Rather, it is only when a probationer is served with an OSC that the probationer receives actual notice of the State's decision to proceed against the probationer for any violations. *See* Utah Code Ann. § 77–18–1(9) (Supp.1988).

Furthermore, common sense dictates that notice to a probationer that he or she has violated the terms of his or her probation is, by itself, insufficient to constitute a "charge" under section 77–18–1(8)(a). Almost surely, the probationer is already aware of his or her violations. The significance of being "charged" is that it serves notice upon the probationer that he or she *will be* called into court to answer for that violation.

Finally, our definition of "charged" is consistent with section 77–18–1(9), which provides that revocation of one's probation can occur only after service on the probationer of the affidavit filed by AP & P *and* an OSC.

### 2. Case precedent and legislative intent

■ Even were this court to accept that the term "charged" is ambiguous, we would nonetheless reach the same conclusion as to its meaning. " 'Where statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent.' " *State ex rel. A.B.,* 936 P.2d 1091, 1097 (Utah.Ct.App.1997) (quoting *Brinkerhoff v. Forsyth,* 779 P.2d 685, 686 (Utah 1989) (citation omitted)) (internal brackets omitted). It is only where " 'the statute on its face is unclear or ambiguous' " that the court " 'need … delve into the uncertain facts of legislative history.' " *Id.* (quoting *Visitor*

---

**3.** Section 77–1–3(1) of the Utah Code defines "criminal action" as "the proceedings by which a person is charged, accused, and brought to trial for a public offense"; subsection (2) defines "indictment" as "an accusation in writing presented by a grand jury to the district court charging a person with a public offense"; subsection (3) defines an "information" as "an accusation, in writing, charging a person with a public offense which is presented, signed, and filed in the office of the clerk where the prosecution is commenced." Utah Code Ann. § 77–1–3(1), (2), (3) (1995).

Rule 4(a), Utah Rules of Criminal Procedure, provides that "[u]nless otherwise provided, all offenses shall be prosecuted by indictment or information." Utah R.Crim. P. 4(b) provides that "[a]n indictment or information shall charge the offense for which the defendant is being prosecuted."

Section 77–7–1 of the Utah Code defines "arrest" as "an actual restraint of the person arrested or submission to custody." Utah Code Ann. § 77–7–1 (1995).

*Info. Ctr. Auth. v. Customer Serv. Div. Utah State Tax Comm'n,* 930 P.2d 1196, 1198 (Utah 1997)); *see also State v. Valdez,* 933 P.2d 400, 401 (Utah.Ct.App.1997) (stating "only if the plain language of the statute is unclear do we 'resort to legislative history and purpose for guidance' ").

The probation statute in effect when defendant was placed on probation stated: "Any time spent by a person outside of confinement *after commission of* a probation violation does not constitute service of the total term unless the person is exonerated at a hearing to revoke the probation." Utah Code Ann. § 77–18–1(11)(a) (1984) (emphasis added). In *State v. Green,* 757 P.2d 462, 464 (Utah 1988), the supreme court rejected the State's argument that this provision allowed for the tolling of a probationer's term "when any violation occurs within the period and that there is no time limit for initiating a revocation action." The court explained:

> Defendants would be left in a perpetual state of limbo; although their probation would appear to have terminated, ... defendants would actually be subject to a continued term of fictional supervision. This indefinite probationary term could theoretically be revoked many years after the original imposition and suspension of sentence.... This construction would obviate the certainty and regularity created by the statute and ignore the plain meaning of the word "terminate."

*Id.* Accordingly, a revocation proceeding commenced after the expiration of the probation term exceeded the trial court's jurisdiction and authority. *See id.*

A few years later, our supreme court identified the procedures a trial court must complete to retain jurisdiction over a probationer after the expiration of that probationer's initial term. In *Smith v. Cook,* 803 P.2d 788, 789 (Utah 1990), the court reviewed a proceeding in which an affidavit supporting an OSC was filed within the probationer's term but the OSC was not served on the probationer until after that term had expired. In rejecting the State's argument that filing of the affidavit tolled the running of the probationer's term, the court focused on both "the nature and degree of notice to which an

individual is entitled [under section 77–18–1] prior to a revocation hearing." *Id.* at 795. As the court explained, Utah Code Ann. § 77–18–1(5)(b) and (c) (Supp.1981) required not only that a court " 'cause to be served on the defendant a copy of the affidavit and order to show cause,' " but also that the order "inform the defendant of the nature of the accusations against him, his right to counsel, and his right to present evidence." *Id.* (citation omitted); *see also* Utah Code Ann. § 77–18–1(12) (1984) (stating that "[p]robation may not be revoked except upon a hearing in court" after the court has "cause[d] to be served on the defendant a copy of the affidavit and an order to show cause," which order must "specify a time and place for the hearing" and inform defendant of his right to be represented by counsel and his right to present evidence); *Id.* § 77–18–1(9) (Supp.1988) (same); *Id.* § 77–18–1(9) (1989) (same, except service shall be of either order to show cause or warrant for arrest).

The court concluded that the "emphasis on notice ... is consistent with the assertion that a court retains the authority to revoke probation if the probationer is served with notice *of the revocation proceedings* within the probation period" and that the "assertion that a probationer is entitled to notice within the period of probation in order for the court to retain the authority to revoke probation is consistent with the rationale underlying our decision in *Green.*" *Cook,* 803 P.2d at 795 (emphasis added). This court later reiterated that proper notice must be " 'reasonably calculated, under all the circumstances, to apprise interested parties *of the pendency of the action* and afford them an opportunity to present their objections.' " *Rawlings,* 893 P.2d at 1069 (emphasis added) (quoting *Nelson v. Jacobsen,* 669 P.2d 1207, 1212 (Utah 1983) (citation omitted)).

Although the legislature amended section 77–18–1(8)(a) in 1987 to provide that "[a]ny time served by a probationer outside of confinement *after having been charged* with a probation violation and prior to a hearing to revoke probation does not constitute service of time toward the total probation term unless the probationer is exonerated at a hearing to revoke the probation," Utah Code

Ann. § 77–18–1(8)(a) (Supp.1988) (emphasis added), nothing in the legislative history suggests the legislature intended to institute different notice requirements from those subsequently described in *Cook*.[4] Indeed, the limited comments within the legislative record support a conclusion that the 1987 amendment to subsection (8)(a) was intended only to clarify the ambiguous language in the process of being identified by our supreme court in *Green*.

Finally, our conclusion that the charging of a probation violation requires service of notice on a probationer of the actual accusations and of the need to prepare a defense not only removes the "danger of placing [probationers] 'in a state of perpetual limbo'" which so concerned our supreme court in *Green* and *Smith*, but "is also in accord with the decisions of th[at] court, as well as the United States Supreme Court, holding that the guarantees of the fundamental fairness embodied in the due process clause of the United States Constitution entitle probationers to written notice of the accusations against them prior to their revocation hearings." *Smith*, 803 P.2d at 795 (footnote omitted).[5]

### Actual Notice

Finally, the State suggested at oral argument that, even if Grate was not formally charged with a probation violation within his initial probation term, the filing of a notice of violation with the court and Grate's subsequent arrest constituted sufficient actual notice of the charges to satisfy the notice requirement set forth in *Smith*.

■ We first note that a court's jurisdiction over probation revocation proceedings is governed by statute. *See State v. Green*, 757 P.2d 462, 464 (Utah 1988) ("[T]he power to revoke probation must be exercised within legislatively established limits."). Thus, no matter what actual notice Grate may have received, if such notice did not satisfy the requirements set forth in section 77–18–1, the trial court lacked jurisdiction to revoke his probation. The discussion above, then, disposes of the State's argument.

As we have stated, the term "charged" within section 77–18–1(8)(a) comprises two distinct facts of which the probationer must receive notice. Most obviously, the notice must inform the probationer of the specific violations the State believes he or she has committed. Equally important, however, is that such notice inform the probationer that he or she *is being*—rather than may at some future date be—called into court to respond to the State's allegations.

■ In this case, Grate received actual notice within his initial probation term of the probation violations the State believed he had committed. Thus, the first prong of the notice requirement is met. However, Grate received no notice within his initial probation term of an imminent need to appear in court to respond to those allegations. At the only

4. The only legislative comments arguably applicable to the revisions in question are: "These amendments contained in this bill are taking care of repetitious language, taking care of some ambiguities that exist in the law. Those are rather technical and there's been no opposition to any of those small changes." Recording of Utah House Floor Debates, 47th Leg., Regular Sess. (Feb. 16, 1987) (statement of Rep. Richards); and, "Many of the proposed amendments in the Code are to improve the syntax, consolidate or repeal repetitious or superfluous language, and to clarify ambiguity." Recording of Utah Senate Floor Debates, 47th Leg., General Sess. (Feb. 25, 1987) (statement of Sen. Steel).

5. *See also State v. Cowdell*, 626 P.2d 487, 488 (Utah 1981) (reversing revocation order where court relied on ground other than that contained within order to show cause, stating that, "in revoking a probation, a court may not ignore fundamental precepts of fairness protected by the due process clause," which include "written notice of the ground or grounds on which revocation is sought"); *Rawlings*, 893 P.2d at 1069 (holding due process protections attach where statute provides for notice and hearing in probation extension proceedings; proper notice requires informing party of specific issues pending before the court and a reasonable opportunity to meet the opposing party's claims; and lack of service of proper notice prior to expiration of probationary term removes trial court's jurisdiction to extend term); *State v. Moya*, 815 P.2d 1312, 1315 nn. 6–7 (Utah Ct.App.1991) (stating "[p]robation may not be retroactively revoked no matter how clear it subsequently appears that probation requirements were not followed, where no *enforcement* action is taken prior to the elapse of the term of probation" (emphasis added)).

hearing before the court concerning the violations, the State requested a continuance to prepare the affidavit in support of an OSC. Almost one whole year passed and Grate's initial probation term expired. Under such circumstances, Grate would not have been unreasonable in concluding that the State had decided to forego any enforcement action regarding the violations.

To hold such notice sufficient would not only allow for trial court jurisdiction in excess of statutory limits, it would also subject probationers to that very same "perpetual limbo" rejected in *Green*. We therefore conclude that the actual notice Grate received in this case was insufficient to extend the trial court's jurisdiction beyond the expiration of Grate's original term.

## CONCLUSION

We conclude that a probationer is not charged with a probation violation within section 77–18–1(8)(a) until he or she has received written notice both of the nature of the allegations against him or her and of the pendency of an enforcement action in the trial court requiring a response. We further conclude that because Grate was not charged with a probation violation within the original term of his probation, his probation terminated as a matter of law on July 15, 1988, such that the trial court lacked jurisdiction to revoke Grate's probation on August 12, 1988. We therefore reverse the trial court's denial of Grate's 1996 Motion to Correct an Illegal Sentence.

DAVIS, P.J., and BILLINGS, J., concur.