**STATE of Utah, Plaintiff and Appellee,**

v.

**Rex RAWLINGS, Defendant and Appellant.**

**No. 940262–CA.**

Court of Appeals of Utah.

March 17, 1995.

Steven B. Killpack, Margaret P. Lindsay (argued), Utah County Public Defender Ass'n, Provo, for appellant.

Todd A. Utzinger (argued), Asst. Atty. Gen., Jan Graham, State Atty. Gen., Salt Lake City, for appellee.

Before BILLINGS, Associate P.J., and DAVIS and JACKSON, JJ.

## OPINION

DAVIS, Associate Presiding Judge:

Defendant Rex Rawlings is before this court for the second time. Defendant is again appealing the trial court's initial order extending defendant's probation and its subsequent order revoking defendant's probation and is consequently challenging the post-remand proceedings. We reverse.

## FACTS

On October 11, 1985, defendant pled guilty to a single count of attempted sodomy on a child, a first-degree felony, in violation of Utah Code Ann. § 76–5–403.1 (1985). Defendant was sentenced to five years to life in the Utah State Prison and placed on 18 months probation. A condition of defendant's probation was that he "enter and complete the long-term sex offender program [program] at the Utah State Hospital." If defendant failed to complete the program, "then execution [would] enter on the prison sentence." Defendant also signed a proba-

tion agreement with Adult Probation & Parole (AP & P) which included the condition that he complete the "sex offender program." Throughout those proceedings, defendant was represented by Sherry Ragan, a public defender. Although Ragan subsequently changed positions from public defender to county prosecutor after the sentencing proceedings were completed, she never withdrew as defendant's counsel.

Defendant's probation was to expire by operation of law[1] on May 6, 1987. On or about April 13, 1987, AP & P generated a departmental memorandum directed to the trial court which stated that defendant "has progressed favorably in the program, but . . . needs to continue in treatment."[2] AP & P recommended that the court extend defendant's probation for an additional 18 months so that he could complete the program. No motion was filed or made by the court or prosecutor to extend defendant's probation.[3] However, the court was apparently made aware of the recommendation and a hearing was scheduled for April 17, 1987.[4] Defendant received nothing in writing of any nature from any source and learned of the hearing when advised thereof casually by a hospital aide two days before the hearing date.

At the hearing (which was characterized by the court as a "review"), Ragan appeared as counsel for the State; defendant was nei-ther present nor represented by counsel. Ragan did not inform the court that she had initially represented the defendant at his sentencing proceedings. Some time after the proceedings had terminated, Ragan met defendant in the hall, told him the matter had already been heard and that his probation had been extended. Defendant claims that he asked Ragan whether the extension was in his best interest and she replied that it was.[5] Ragan then proceeded to escort defendant into the courtroom to speak to Judge Park[6] and, in reliance on Ragan's advice, defendant acquiesced to the extension. The following minute entry, dated April 17, 1987, was made by the trial court:

> This matter came before the Court for review. Sherry Ragan, appeared as counsel for the State of Utah. The defendant was not present nor represented by counsel.
>
> The Court reviewed the recommendation of Adult Probation and Parole Dept. requesting defendant's probation [be] extended for eighteen months in order for defendant to complete the Utah State Hospital Sex Offender Program. Court so ordered.
>
> Later, Defendant appeared and concurred with the court's order.

Several months after his original term of probation would have expired, defendant

---

1. Utah Code Ann. § 77–18–1(10)(a) (Supp.1985) provided that "[u]pon completion without violation of 18 months probation in felony . . . cases, . . . the offender shall be terminated from sentence." *Id.*

2. The memorandum did not comply with Utah Code Ann. § 77–18–1(10)(b) (Supp.1985), which provided that "[t]he Department of Corrections *shall* notify the sentencing court in writing *30 days in advance* in all cases where termination of supervision will occur by law." *Id.* (emphasis added). The memorandum was filed less than thirty days before the expiration of defendant's probation and also failed to inform the court that defendant's probation period was about to terminate by operation of law.

3. Utah Code Ann. § 77–18–1(10)(c) (Supp.1985) provided that "[a]t any time prior to the termination of probation the court may, after a hearing with proper notice, *upon its own motion or the motion of the prosecutor,* extend probation for good cause shown." *Id.* (emphasis added). Rule 12 of the Utah Rules of Criminal Procedure requires that any motion "other than one made during a trial or hearing shall be in writing unless the court otherwise permits." In the case at bar, there was no motion, written or otherwise, filed or made to extend defendant's probation, nor is there anything in the record to suggest that the court's permission was obtained to waive the motion requirement.

4. The April 13, 1987 memorandum from AP & P was not *filed* until April 21, 1987. The record does not reveal how the court received the recommendation from AP & P.

5. Ragan does not deny making this statement, but only states that she does not remember making it.

6. Whether defendant actually spoke with Judge Park or the courtroom clerk is a contested issue. There is no transcript of what occurred.

twice appeared before the trial court[7] at which time the court admonished defendant for violating the program rules and ordered that defendant remain in and cooperate with the program.[8] On March 15, 1988, AP & P filed a motion for an order to show cause, accompanied by an affidavit, requesting that the court require defendant to show why his probation should not be revoked. The affidavit alleged that defendant had violated the conditions of his probation by not completing the program and, on this basis, the court should revoke defendant's probation and impose the prison sentence. The order was issued by the trial court and the record reflects that defendant was properly served.

A hearing on the order to show cause was held June 3, 1988. Defendant was present with counsel. Because defendant had failed to complete the program at the Utah State Hospital, a condition of his probation, the trial court ordered on July 8, 1988 that defendant's probation be revoked and that his original sentence be imposed. Defendant appealed, arguing that the trial court lacked jurisdiction to revoke his probation because of procedural defects in his probation extension proceedings. However, because the trial court's minute entry extending defendant's probation was unsigned, this court in *State v. Rawlings*, 829 P.2d 150, 153 (Utah App.1992), determined that it lacked jurisdiction to consider the issue. Thus, the case was remanded for further proceedings to address both the propriety of the extension proceedings and the trial court's resulting jurisdiction over the revocation proceedings.

On remand, evidentiary hearings on the propriety of the extension proceedings were commenced before Judge Park[9] and concluded before Judge Sawaya.[10] Judge Sawaya found that, while it was unclear whether defendant was notified in writing, defendant knew of the April 17, 1987 extension hearing and its purpose[11] and, therefore, had adequate and proper notice. Judge Sawaya further concluded that, based on defendant's need for additional time to complete the long-term sex offender program, a requirement of his probation, the court had good cause to extend defendant's probation. Thus, Judge Sawaya entered a nunc pro tunc order dated May 25, 1993 extending defendant's probation.[12]

Defendant's probation revocation proceedings were then returned to Judge Park so that the court could enter findings of fact and conclusions of law in support of the probation revocation order. Judge Park found that defendant had willfully violated the rules of the program and, hence, willfully violated the requirement of his probation agreement. As a result, a nunc pro tunc order dated February 3, 1994 was entered by Judge Park revoking defendant's probation.

Defendant appeals both the propriety of the original extension proceedings and the subsequent revocation proceedings.

## ISSUE

Although defendant raises several issues on appeal, we need reach only one: whether defendant's probation was properly extended on April 17, 1987, or whether defendant's probation had expired on May 6, 1987, leaving the trial court without jurisdiction to revoke defendant's probation on July 8, 1988 or conduct any further proceedings in an effort to remedy errors.

## STANDARD OF REVIEW

Whether the trial court had the authority to extend defendant's probation is a question of law. "[W]e accord a trial court's conclu-

---

7. The dates of these hearings were November 6, 1987 and February 5, 1988.

8. At these proceedings, defendant was represented by his new attorney, Gary Weight.

9. The date of this hearing was February 12, 1993.

10. Judge Park recused himself when it was determined that he may be called as a witness with

respect to the April 17, 1987 extension proceedings.

11. The record of defendant's May 18, 1993 extension hearing supports a finding that defendant knew of the purpose of the hearing only *after* its conclusion and his discussion with Ragan.

12. The "extension" hearing before Judge Sawaya was held on May 18, 1993, over six years from the date of the original extension proceedings.

sions of law no particular deference, reviewing them for correctness." *State v. Wilcox,* 808 P.2d 1028, 1031 (Utah 1991).

## ANALYSIS

Defendant claims that the trial court lacked the authority to extend his probation because the April 17, 1987 proceedings were not conducted in accordance with the provisions of Utah Code Ann. § 77–18–1 (Supp. 1985), and in particular, because he was not given proper notice of the hearing.[13] The State responds that defendant received adequate notice of the extension proceedings and, therefore, no procedural defects were present which would have rendered the April 17, 1987 hearing ineffectual. The State concedes, however, that had defendant not received proper notice of the hearing, the extension proceedings were not "properly initiated prior to the end of his probation [and, therefore,] defendant would ... be[ ] entitled to a reversal of the 1988 order revoking his probation on the ground that the district court lacked jurisdiction over the matter."

■ It is well settled that a probationer shall be accorded due process at revocation proceedings because revoking probation seriously deprives a person of his or her liberty. *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973); *Smith v. Cook,* 803 P.2d 788, 795 (Utah 1990); *State v. Bonza,* 106 Utah 553, 150 P.2d 970, 972 (Utah 1944). What is less clear is whether due process attaches to probation extension proceedings. Some courts have held, without reference to any statutory law, that due process protections do not attach to probation extension proceedings. Even so, because of the high risk of prejudice to the probationer when he or she is not given notice of the extension hearing and the hearing is conducted ex parte, these courts have invoked their supervisory powers requiring the necessary parties to (1) give the probationer notice of the extension hearing; (2) advise the probationer that he or she has a right to a hearing; and/or (3) advise the probationer that he or she has the right to

the assistance of counsel. *Forgues v. United States,* 636 F.2d 1125, 1127 (6th Cir.1980); *United States v. Cornwell,* 625 F.2d 686, 689 (5th Cir.1980), *cert. denied Cornwell II v. U.S.,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 610 (1980); *Skipworth v. United States,* 508 F.2d 598, 602–03 (3d Cir.1975). *But see United States v. Carey,* 565 F.2d 545, 547 (8th Cir.1977), *cert. denied* 435 U.S. 953, 98 S.Ct. 1582, 55 L.Ed.2d 803 (1978).

■ We hold that a probationer in the State of Utah is accorded a measure of due process at a probation extension proceeding and is thus entitled to the available protections. The language contained in section 77–18–1 provides that "[a]t any time prior to the termination of probation the court may, *after a hearing with proper notice,* ... extend probation for good cause shown." Utah Code Ann. § 77–18–1(10)(c) (Supp.1985) (emphasis added). Thus, section 77–18–1(10)(c) creates an expectation on behalf of the probationer of notice of the extension proceedings and a hearing, and it is this statutory expectation to which due process protections attach. *See Board of Pardons v. Allen,* 482 U.S. 369, 381, 107 S.Ct. 2415, 2422, 96 L.Ed.2d 303 (1987); *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 11–12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979); *cf. Hatch v. Deland,* 790 P.2d 49, 51 (Utah App.1990), *abrogated on other grounds by Labrum v. Board of Pardons,* 870 P.2d 902 (Utah 1993).

In *Smith v. Cook,* 803 P.2d 788 (Utah 1990), the Utah Supreme Court addressed an issue analogous to the one before this court in the context of a revocation proceeding. In *Smith,* the plaintiff was convicted of forcible sodomy upon a child and was sentenced to a prison term of five years to life. Execution of the sentence was suspended, however, and the plaintiff was placed on three years probation. Three months before his probation expired, the plaintiff was again arrested and charged with two counts of sexual abuse of a child and sodomy upon a child. As a result of this arrest, an incident report and "affida-

---

**13.** Defendant also claims that the trial court lacked the authority to extend his probation based on the absence of a proper motion before the court; based on our holding, however, we need not separately address this issue.

vit to show cause" why the plaintiff's probation should not be revoked were filed with the court before the expiration of the defendant's probation. However, the court did not order the plaintiff to show cause why his probation should not be revoked until after the plaintiff's original term of probation had expired. Thus, the plaintiff was first given notice of the probation revocation proceedings after his probation had expired. At the hearing on the order to show cause, the plaintiff's probation was revoked and the prison sentence imposed. *Id.* at 789.

The plaintiff filed a petition for habeas corpus and argued that the trial court did not have the jurisdiction to revoke his probation because, "by the express terms of his probation order, his probation terminated prior to the time revocation proceedings were initiated." *Id.* at 793. Thus, the supreme court addressed the issue of "whether probation can be revoked when the revocation proceeding had been arguably initiated but not completed before the expiration of a judicially imposed probation period." *Id.*

The court held that trial courts are not statutorily required to complete revocation proceedings before the expiration of the probation period. *Id.* at 794. The court reasoned that allowing revocation proceedings to continue after the expiration of the probation period when the proceedings are properly initiated does not subject probationers to the "danger of placing them 'in a state of perpetual limbo[, where] although their probation would appear to have terminated ... defendants would actually be subject to a continued term of fictional supervision.'" *Id.* at 795 (quoting *State v. Green,* 757 P.2d 462, 464 (Utah 1988)). The court then addressed the related issue of "which stage in the revocation proceedings must be reached within the period of probation for the court to retain its authority over probationers beyond the probation period." *Id.* at 794.

The court in *Smith* began its analysis by looking at the applicable statutory law. The plaintiff's revocation proceedings were governed by Utah Code Ann. § 77–18–1(5)(a) (Supp.1981), which provided that probation may not be revoked "except upon a hearing in court and a finding that the conditions of

probation have been violated." *Id.* Furthermore, "[i]f the court determines that there is probable cause [to revoke a defendant's probation], it shall cause to be served on the defendant a copy of the affidavit and an order to show cause why his probation should not be revoked or modified." *Id.* § 77–18–1(5)(b). Because section 77–18–1(5)(b) specifically provided that a probationer was to be served with an order to show cause why his or her probation should not be revoked or modified before a court could actually revoke or modify the probation, the court determined that "in order for a court to retain its authority over a probationer who is not actively evading supervision, the probationer must be served with the order to show cause within the period of probation." *Smith,* 803 P.2d at 794. The probationer's right to notice is necessary because "all parties concerned would be aware of the proceedings ... at the time the probation terminates. Probationers could also be assured that no new proceedings or proceedings under different grounds could be brought against them once the probation period has ended." *Id.* at 795 (footnote omitted). Furthermore, the court felt that its holding was appropriate because it "guarantee[d] the fundamental fairness embodied in the due process clause of the United States Constitution [which] entitle[s] probationers to written notice of the accusations against them." *Id.* at 795. Even though revocation proceedings were commenced well before the expiration of probation, because the plaintiff was not given *notice* of the revocation proceedings before the probation period expired, the court held that the trial court lacked the authority to revoke the plaintiff's probation and his petition for habeas corpus was granted. *Id.* at 796.

While *Smith* involved statutory prerequisites to commencement of a probation *revocation* proceeding, the same analysis is applicable to statutory prerequisites to commencement of probation *extension* proceedings. As in *Smith,* this court must look to the applicable statute to determine "which stage in the [extension] proceedings must be reached within the period of probation for the court to retain its authority over proba-

tioners beyond the probation period." *Smith*, 803 P.2d at 794.[14]

At the time relevant to this appeal, the pertinent parts of section 77–18–1 provided that

(10)(a) Upon completion without violation of 18 months probation in felony ... cases, ... the offender shall be terminated from sentence, unless the person is earlier terminated by the court.

(b) The Department of Corrections shall notify the sentencing court in writing 30 days in advance in all cases where termination of supervision will occur by law. The notification shall include a probation progress report....

(c) At any time prior to the termination of probation the court may, after a hearing with proper notice, upon its own motion or the motion of the prosecutor, extend probation for good cause shown, for one additional term of 18 months....

Utah Code Ann. § 77–18–1 (Supp.1985).

Thus, among other things, section 77–18–1(10) specifically provides that the probationer is entitled to proper notice of the extension proceedings and a hearing before the court has the authority to extend probation. If no such notice is given and a hearing held, the court lacks the authority to extend the probation period because the trial court's discretion to extend probation "must be exercised within the limits imposed by the legislature." *Smith*, 803 P.2d at 791.

"Timely and adequate notice and an opportunity to be heard in a meaningful way are the very heart of procedural fairness." *Nelson v. Jacobsen*, 669 P.2d 1207, 1211 (Utah 1983) (citations omitted); *accord Plumb v. State*, 809 P.2d 734, 743 (Utah 1990); *W. & G. Co. v. Redevelopment Agency*, 802 P.2d 755, 761 (Utah App.1990). "[A]ll parties are entitled to notice that a particular issue is being considered by a court and to an opportunity to present evidence and argument on that issue before decision." *Plumb*, 809 P.2d at 743. A defendant may be denied his or her right to due process under article I,

section 7, of the Utah Constitution if adequate notice has not been given. *Id.; see also Nelson*, 669 P.2d at 1212 (notice is " '[a]n elementary and fundamental requirement of due process' ") (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). " ' "Many cases have held that where notice is ambiguous or inadequate to inform a party of the nature of the proceedings against him [or her] or not given sufficiently in advance of the proceeding to permit preparation, a party is deprived of due process." ' " *Plumb*, 809 P.2d at 743 (quoting *Cornish Town v. Koller*, 798 P.2d 753, 756 (Utah 1990) (quoting *Nelson*, 669 P.2d at 1212)); *accord W. & G. Co.*, 802 P.2d at 762.

■ Sufficient notice is informing a party "of the *specific issues* which they must prepare to meet" and giving the party a " 'reasonable opportunity to know the claims of the opposing party and to meet them.' " *W. & G. Co.*, 802 P.2d at 761 (emphasis added) (citations and quotation omitted). The Utah Supreme Court has set forth the well-established requirements of adequate notice:

"[N]otice [must be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance."

*Nelson*, 669 P.2d at 1212 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657).

■ In the case at bar, the uncontroverted evidence shows that defendant was not given proper notice of the extension proceedings. Defendant informally learned of the hearing through an aide at the Utah State Hospital, who apprised defendant "a couple of days before [he] was supposed to be there" that he needed to go to the courthouse for a "probation hearing," and that he was to go to Judge

14. Although additional time to complete the program is an adequate basis for extension of proba-

tion, it is noteworthy that, unlike the probationer

Ballif's courtroom at 10:00 a.m.[15] At no time was defendant informed of the issues which were scheduled to be heard at the extension proceedings so that he could prepare to address them. We conclude that a casual statement to a defendant two days before a hearing is inadequate to reach the level of "proper notice" as contemplated by section 77–18–1(10)(c).[16]

Notwithstanding the impropriety of the prehearing notice, the State suggests that, to the extent defendant was entitled to and denied due process, the events that occurred after the hearing constituted a consent to the proceedings and waiver of any due process claim, and that all of the events through defendant's meeting with Judge Park constituted proper commencement of the extension proceedings.

■ It is true that a defendant may waive his or her constitutional right to due process. However, "[u]nder the due process clause, [a defendant is] entitled to have [adequate notice] imparted to him [or her]; that he [or she] might make an intelligent and informed decision as to whether to waive his [or her] constitutional right to a ... hearing." *Worrall v. Ogden City Fire Dep't*, 616 P.2d 598, 602 (Utah 1980). Thus, in order for defendant to have effectively waived his due process right to proper notice and a hearing on the extension issues, the waiver must be knowing.

■ When defendant arrived at the courthouse for the hearing, he met Ragan, whom he still believed to be his counsel. Ragan informed defendant that the proceedings had been completed and that his probation had been extended. Defendant testified that he asked Ragan if the extension was in his best interest and Ragan replied that it was. Ragan testified that she merely accompanied defendant into the courtroom to meet with Judge Park. Judge Park had no independent recollection of the event. Ragan escorted defendant back into the courtroom, where either the court clerk or the judge received defendant's consent to the extension. Although Judge Sawaya made no specific finding, it can be reasonably inferred that defendant's consent to the extension was the result of either his confidence in, or the advice of, Ragan, the State's attorney with interests adverse to those of defendant. At no time was defendant advised of (1) the fact that Ragan represented the State and no longer represented defendant; (2) the effects of the extension; (3) the available alternatives, if any; (4) the fact that he had a right to proper notice of the hearing; (5) the fact that he had a right to a hearing on the matter; or (6) the failure of the State to otherwise comply with the provisions of section 77–18–1. Based on these circumstances surrounding defendant's consent to the extension, it cannot be said that he knowingly waived his due process right to proper notice of the issues before the court and the right to a hearing.

■ Of course the State could have remedied the defective proceedings by later properly commencing proceedings under section 77–18–1, *see State v. Jameson*, 800 P.2d 798, 802 (Utah 1990), as it purported to do some six years after the fact.[17] However, in

---

in *Smith*, Rawlings was not in default under the terms of the probation agreement.

15. Which was partially incorrect. The proceedings were actually before Judge Park, not before Judge Ballif.

16. We note that an amendment to § 77–18–1, effective April 27, 1987, provided that before probation could be extended, the probationer was entitled to a minimum of five days notice. Utah Code Ann. § 77–18–1(7)(c) (1987). It could be argued, therefore, that because the amendment is procedural in nature, it can be applied retroactively, hence applying to the case at hand. *See Smith v. Cook*, 803 P.2d 788, 792 (Utah 1990).

17. Relying on *State v. Jameson*, 800 P.2d 798 (Utah 1990), the State contends that defendant received proper notice of the April 17, 1987 hearing and that any procedural defects were remedied by the 1993 hearings before Judge Sawaya and Judge Park. Although the holding in *Jameson* seems to support the State's argument, it is factually distinguishable from the case at hand. In *Jameson*, the defendant was taken into custody for violating the terms of his probation before the probation period expired. *Id.* at 803. At the time the defendant was taken into custody, section 77–18–1(11)(a) provided that "[a]ny time spent in confinement awaiting a hearing or decision concerning revocation of probation does not constitute service of the term of probation except in the case of exoneration at the hearing." Utah Code Ann. § 77–18–1(11)(a) (Supp.1985). Thus,

accordance with the holding in *Smith,* a court loses jurisdiction over a probationer when probation extension proceedings are not properly commenced before the probation term expires. To properly commence probation extension proceedings, the provisions of section 77–18–1 must be complied with, particularly, proper notice of the hearing must be given or waived by the probationer. *Smith,* 803 P.2d at 794. Because neither occurred in this case, the proceedings were never properly commenced, the trial court lacked the authority to extend defendant's probation, and its attempt to do so on April 17, 1987 is null and void. Further, because the failure to comply with section 77–18–1 and accord defendant due process was not corrected before defendant's probation expired on May 6, 1987, the trial court lost jurisdiction over defendant and, therefore, any subsequent proceedings are also null and void.[18]

## CONCLUSION

A trial court retains jurisdiction over a probationer after the probation period expires for the purpose of extension proceedings if the proceedings are properly initiated before the probation period expires. In the case at bar, in order for extension proceedings to have been properly initiated, Utah Code Ann. § 77–18–1(10)(c) (Supp.1985) requires, among other things, that the probationer be given "proper notice." Proper notice means informing a probationer of the issues which will be addressed at the extension hearing and giving the probationer adequate time to address them. Because defendant was not given proper notice of the probation extension hearing before the probation period expired and his subsequent meeting with the trial judge did not constitute a

knowing waiver of this due process right, the trial court lacked the authority to extend defendant's probation. Further, because the defects were not corrected before defendant's probation expired, the trial court lost jurisdiction over defendant to conduct any future hearings. Accordingly, we reverse both the 1988 and 1994 orders revoking defendant's probation and conclude that defendant's probation expired on May 6, 1987.

BILLINGS, J., concurs.

JACKSON, J., concurs in result.

---

the defendant's probation had not expired by operation of law, but was suspended when he was taken into custody, and it was for this reason that the court retained its jurisdiction over the defendant, not, as the State suggests, because the revocation proceedings were initiated before the expiration of the probation period. Any question of the trial court's jurisdiction to revoke probation after the probation period expires was initially and explicitly addressed in *Cook,* and it is that case upon which we rely.

18. A "nunc pro tunc" extension hearing conducted approximately six years after the defective proceedings raises due process concerns independent of the 1987 events. *See State v. Taylor,* 818 P.2d 1030, 1032 (Utah 1991) ("substantial lapse of time may raise due process concerns"), *cert. denied, Taylor v. Utah,* 503 U.S. 966, 112 S.Ct. 1576, 118 L.Ed.2d 219 (1992); *cf. State v. Kahl,* 814 P.2d 1151, 1153 (Utah App.1991) (revocation proceedings must be brought within a reasonable time), *cert. denied,* 843 P.2d 516 (Utah 1992). Because of our holding, however, we need not reach the issue.