CACHE COUNTY, Carbon County, Davis County, Duchesne County, Emery County, Grand County, Morgan County, Rich County, Salt Lake County, San Juan County, Sanpete County, Summit County, Uintah County, Utah County, Wasatch County, and Weber County, Petitioners,

v.

PROPERTY TAX DIVISION OF the UTAH STATE TAX COMMISSION and Questar Pipeline Company, Respondents.

DAGGETT COUNTY, Petitioner,

v.

PROPERTY TAX DIVISION OF the UTAH STATE TAX COMMISSION and Questar Pipeline Company, Respondents.

Nos. 950013, 950016, 950374.

Supreme Court of Utah.

Aug. 9, 1996.

Bill Thomas Peters, Salt Lake City, for the Counties.

Jan Graham, Atty. Gen., John C. McCarrey, Kelly W. Wright, Asst. Attys. Gen., Salt Lake City, for Tax Commission.

Gary G. Sackett, C. Scott Brown, Salt Lake City, for Questar.

John P. Sampson, Ogden, for Daggett County.

RUSSON, Justice:

Petitioner Counties (the Counties) and petitioner Daggett County seek review of a Tax Commission (the Commission) ruling adopting revised property tax assessments of Questar's gas utility system for the 1988 through 1992 tax years. The revised assessments were agreed upon by the Property Tax Division of the Tax Commission (the Division), which is the entity responsible for assessing property for the Commission, and Questar Pipeline Co. (Questar). We affirm.

## I. BACKGROUND

Questar is a wholly owned subsidiary of Questar Corporation engaged in the interstate transportation, sale, and storage of natural gas. From 1988 through 1992, the Division assessed ad valorem property taxes on Questar's operating utility property. In 1988, the Division notified Questar that it had $127,949,340 of taxable gas utility property in Utah.[1] In the years 1989, 1990, 1991, and 1992, Questar's assessed value was $135,942,430, $135,978,480, $160,166,220, and $144,393,610, respectively. Pursuant to section 59–2–1007 of the Utah Code, Questar petitioned the Commission for redetermination of each of the assessments, claiming that the Division's assessments were too high.

During the pendency of Questar's appeals, Daggett County moved to intervene, claiming that it had an interest in the proceedings since a portion of Questar's taxes would be allocated to Daggett County. On April 30, 1993, the Commission granted Daggett County's motion to intervene.

Before and after Daggett County's intervention, Questar and the Division held dis-

---

1. A portion of Questar's 1988 appeal was heard by this court in 1993. *See Questar Pipeline v. Tax Comm'n*, 850 P.2d 1175 (Utah 1993). The issues before this court in that case, however, were not dispositive of the entire 1988 appeal.

cussions to resolve the differences between them. What was not discussed was the Division's treatment of a quantity of stored gas in Questar's underground storage facility made of porous sandstone at Clay Basin in Daggett County. In all of its assessments, the Division excluded the value of Questar's stored gas pursuant to the inventory exemption set forth in section 59–2–1114 of the Utah Code. Application of the inventory exemption in all of the initial assessments was never challenged by either Questar, Daggett County, or any other county pursuant to statutory provisions allowing objections to the Division's initial assessments.

In May 1994, Questar and the Division reached a comprehensive settlement of all outstanding issues for the 1988 through 1992 tax years. For the 1988 tax year, Questar and the Division agreed that $118,-950,960 represented a reasonable value of Questar's gas utility property for property tax purposes. For the 1989, 1990, 1991, and 1992 tax years, the Division and Questar stipulated that reasonable values were $131,-326,250, $135,978,480, $145,987,270, and $139,881,440 respectively. On May 6, 1994, Questar and the Division filed the settlement with the Commission.

On June 7, 1994, the Commission entered an order pursuant to section 59–2–1007(4)(a) directing the Counties affected by the adjusted assessments to show cause why the Commission should not accept them as values of Questar's utility properties in Utah for property tax purposes. Soon after, Daggett County filed objections to the revised assessments, claiming that the assessments were too low. At about the same time, the other Counties filed objections, repeating some of Daggett County's, in the same vein.

The Counties and Daggett County argued that the assessments improperly exempted Questar's stored gas at its underground storage facility. They claimed that under section 59–2–1114 of the Utah Code, utility property such as Questar's stored gas does not qualify for the inventory exemption. Thus, they concluded, Questar's stored gas should have been taxed. As an alternative argument, Daggett County contended that at least some of the stored gas should not qualify as inventory under section 59–2–1114 because not all of the gas was "held for sale in the ordinary course of business or for shipping to a final out-of-state destination" as required by the exemption. Rather, Daggett County argued, some of the gas had to be used to provide pressure to facilitate the removal of other portions of the gas. As such, Daggett County asserted, this portion of the gas could not be sold or transported and therefore was nonexempt.

The Counties also objected on the ground that the settlement assessments did not represent fair market value in violation of article XIII, sections 2 and 3 of the Utah Constitution and section 59–2–201(1) of the Utah Code. The Counties pointed out that both settling parties stated that the assessments did not represent either's view of Questar's fair market value. All they could say of the assessments was that the assessments were "reasonable." Therefore, the Counties argued, the Commission could not approve the settlement assessments because it had no assurance that the assessments represented fair market value.

In addition, Daggett County objected to the revised assessments, claiming that the Clay Basin storage facility itself was not included in the assessments. According to Daggett County, even though this facility represented one of Questar's most valuable assets—containing 4,000 acres of underground storage space—it was improperly ignored in the settlement assessments.

Daggett County also objected to the exclusion of Questar's custom-designed software under an exemption for intangible property. *See* Utah Code Ann. § 59–2–102(19). Although it admitted that intangibles were statutorily exempted from property taxation, Daggett County argued that the software did not fit within the statutory definition. Thus, Daggett County argued, the software should have been taxed.

On September 2, 1994, the Commission planned to hold an evidentiary hearing to address the Counties' and Daggett County's objections to the revised assessments. On the day before the scheduled hearing, however, the Commission learned of two items that

could have had a drastic impact on the proceedings.

The first was an objection by the Counties that the Commission lacked jurisdiction to consider the settlement assessments. The Counties claimed that under section 59–2–1007(3) of the Utah Code, the Commission had to render a written decision resolving each of Questar's appeals by the first of October following its initial assessment. Therefore, argued the Counties, the Commission had to resolve Questar's 1988, 1989, 1990, 1991, and 1992 appeals by October 1 of each of the respective years. Because the Commission had not resolved Questar's appeals by those dates, the Counties concluded, the Commission lacked jurisdiction to approve the revised assessments. After hearing the Counties' argument, the Commission took the issue under advisement.

The second item concerned Daggett County's fee arrangement with its property tax advisor, Acca, Inc. Daggett County retained Acca to identify and challenge errors in Commission assessments that resulted in less tax revenue to Daggett County. In December 1992, Daggett County agreed to pay Acca on a contingency basis. According to their agreement, Acca would receive fifty percent of all additional revenues received by the County as a result of its services. During the 1994 Utah legislative session, the legislature enacted a statutory provision barring from participation in Tax Commission appeals counties that retain private firms to challenge Commission assessments on a contingent fee basis. *See* Utah Code Ann. § 59–2–703(2)(c). The law took effect on May 2, 1994. In response to Questar's objection to Daggett County's fee arrangement with Acca, the Commission allowed Daggett County to continue its participation on the condition that it would cure its noncompliance following the hearing. Failing to do so, the Commission ordered, would result in Daggett County's dismissal as a party and the exclusion of any evidence submitted by Daggett County during the hearing.[2]

After taking the jurisdiction issue under advisement and ruling on Daggett County's contingent fee agreement with Acca, the Commission held the evidentiary hearing as scheduled on September 2, 1994. Daggett County and the Counties repeated their objections to the revised assessments. To facilitate its presentation of evidence, Daggett County prepared ten exhibits. The Commission, however, refused to admit any of the exhibits because Daggett County failed to comply with the Division's request that the County provide copies to it prior to the hearing and because it found the exhibits irrelevant to the issues to be addressed.

In response to the Counties' and Daggett County's objections, the Division and Questar adduced expert testimony from D. Brent Eyre, assistant director of the Division, and Morris Jackson, Questar's tax manager, both experts in the field of appraisal. With regard to the underground stored gas, Mr. Jackson testified that the Division's assessments did not include stored gas because of long-standing Commission practice to exempt this gas as inventory. Mr. Eyre testified that pursuant to Federal Energy Regulatory Commission guidelines, gas in storage facilities is broken down into one of three categories, "two of which are inventory and one of which is nonrecoverable and is capitalized in an asset account and depreciated." However, he further testified that he knew of no gas that Questar had purchased that was nonrecoverable from the storage facility. Hence, he stated, all of the gas in the Clay Basin storage facility should be exempted as inventory.

Regarding the revised assessment's treatment of the Clay Basin storage facility itself, Mr. Jackson testified that it was not reflected on Questar's records because it was not owned by Questar but operated pursuant to leases with the federal government. Nevertheless, Mr. Jackson testified, to the extent that use of the facility adds value to Questar, that value was captured by two of the three approaches used by the Division to assess utility property. Further explanation re-

---

2. Following the hearing, Daggett County altered its fee arrangement with Acca to comply with section 59–2–703(2)(c).

quires a brief description of the Division's assessment methods.

In appraising property for tax purposes, the Division generally employs three recognized approaches or indicators of value—cost, income, and market. The cost approach determines property value on the basis of its cost less depreciation. The income approach determines the value of property by determining the income which that property can derive. The market approach uses the prices at which comparable properties are bought and sold as a basis for determining value. Because large utility systems such as Questar's are rarely bought or sold, the Division uses a surrogate market approach known as the stock and debt indicator. Under this indicator, the market value of a utility's property is determined by considering the market value of the utility's common and preferred stock in addition to the market value of its bonds (or debt). Following application of these indicators, the indicators' results are reconciled to a single estimate. A portion of that estimate is allocated to Utah, and that figure represents the property's value for Utah property tax purposes.

In this case, Mr. Jackson explained, the value of the storage facility was captured in the income and the stock and debt indicators. According to Mr. Jackson, "[t]he income indicator of value captures all of the revenues" generated by Questar's use of the facility. In addition, Mr. Jackson testified that the stock and debt indicator includes the facility's value because that indicator "captures the value that the public perceives in the valuation of Questar Corporation and stock as allocated to Questar Pipeline." Mr. Eyre essentially agreed with Mr. Jackson. He testified that Questar's leasehold interest in the storage facility had been fully valued and reflected in the revised assessments.

Concerning the taxability of Questar's custom software, Mr. Eyre testified that the Division adjusted the initial assessments to account for what Questar had reported as "costs incurred for the development of in-house customized software." He further testified that while mass-produced software would not qualify as intangible property and therefore would not be exempt from taxation,

custom-designed software would. Therefore, Mr. Eyre concluded, Questar's software qualified for the intangible property exemption.

On December 12, 1994, the Commission, acknowledging jurisdiction over the matter, issued an order accepting the Division's revised assessments of Questar's utility properties in Utah. The Counties and Daggett County sought review.

The Counties, joined by Daggett County, argue that (1) by delaying a ruling approving or disapproving the revised assessments beyond the statutory deadlines, the Commission lost jurisdiction over Questar's appeals; (2) Questar's stored gas was improperly exempted from taxation as inventory; and (3) the Commission violated constitutional and statutory mandates by adopting tax assessments without assurance that the assessments represented fair market value. In addition to the Counties' contentions, Daggett County adds that (1) the Commission improperly forced Daggett County to abandon its contingent fee arrangement with Acca; (2) the revised assessments incorrectly exclude the value of the Clay Basin storage facility; (3) the revised assessments erroneously exempted Questar's customized software as intangibles; and (4) the Commission improperly excluded its ten exhibits at the hearing.

## II. ANALYSIS

The first issue is whether the Commission lost its jurisdiction over Questar's appeals by failing to issue a written decision by statutory deadlines set forth in section 59-2-1007(3) of the Utah Code. The standard of review for this issue is governed by section 59-1-610 of the Utah Code. That section provides, "When reviewing formal adjudicative proceedings commenced before the commission, the . . . Supreme Court shall . . . grant the commission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in a statute at issue before the appellate court." Utah Code Ann. § 59-1-610(1)(b). The proceedings from which the Counties and Daggett County seek review were formal adjudi-

cative proceedings. *See* Utah Admin.Code R. 861–1A–5. Also, the Commission's conclusion that failure to satisfy section 59–2–1007(3)'s deadline does not divest it of jurisdiction is a matter of statutory construction and therefore is a conclusion of law. *See State v. Thurman,* 911 P.2d 371, 372 (Utah 1996). And finally, section 59–2–1007 contains no explicit grant of discretion to the Commission. Thus, section 59–1–610(1)(b) demands that we review the Commission's conclusion under a correction of error standard.

■ Whether a statutory time frame is jurisdictional depends on whether the statute's time designation is "directory" or "mandatory." A designation is mandatory, and therefore jurisdictional, if it is " 'of the essence of the thing to be done.' " *Kennecott Copper Corp. v. Salt Lake County,* 575 P.2d 705, 706 (Utah 1978) (quoting 1A Sutherland, *Statutory Construction* § 25.03 (4th ed.)). However, a designation is merely directory, and therefore not jurisdictional, if it is " 'given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey no prejudice will occur to those whose rights are protected by the statute.' " *Id.* (quoting 1A Sutherland, *Statutory Construction* § 25.03 (4th ed.)).

The statute at issue in this case provides a means by which disgruntled taxpayers and counties may object to property tax assessments prepared by the Commission. Section 59–2–1007 states that dissatisfied taxpayers, or any county upon a showing of reasonable cause, may, on or before June 1, apply to the Commission for a hearing to voice objections to the Commission's annual assessment.[3] Utah Code Ann. § 59–2–1007(1). The statute further provides, "The commission shall set a time for hearing the objection and render a written decision no later than October 1." *Id.* § 59–2–1007(3). In this case, although Questar timely appealed the Division's initial assessments for the 1988 through 1992 tax years, no written decision was rendered by the Commission until De-

cember 12, 1994, well past the statutory deadline for all of Questar's appeals.

■ In a case recently decided by this court involving the Commission and all of the counties that are parties to this case, we held that section 59–2–1007(3)'s October 1 time designation was not mandatory, but merely directory and therefore not jurisdictional: "[S]ection 59–2–1007(3)'s time designation can be viewed only as a guide 'given with a view merely to the proper, orderly and prompt conduct' of the Commission's business. We hold that the Commission's failure to meet the October 1 deadline did not result in loss of jurisdiction over [the taxpayer's] appeal." *Beaver County v. Utah State Tax Comm'n,* 916 P.2d 344, 352. Because the Counties' arguments in this case are no more persuasive than their arguments in *Beaver County,* we apply that holding here. The Commission's failure to meet the October 1 deadlines did not result in a loss of jurisdiction over Questar's appeals.

The next issue is whether Questar's stored gas was properly exempted from taxation as inventory. The Counties and Daggett County maintain that the statute that sets forth the inventory exemption expressly excludes public utility property such as Questar's stored gas. *See* Utah Code Ann. § 59–2–1114(2)(b) (1992) (providing that inventory exemption does not apply to property under section 59–2–201 of the Utah Code, which includes utility property). In response, Questar offers an alternative ground to affirm the Commission's application of the exemption. *See White v. Deseelhorst,* 879 P.2d 1371, 1376 (Utah 1994) ("[W]e may affirm the judgment on any ground, even one not relied upon by the [tribunal below].") Questar maintains that neither the Counties' nor Daggett County's arguments should be considered because neither objected at the appropriate time. We agree.

■ Section 59–2–1007(1) of the Utah Code provides that if a county objects to an assessment performed by the Commission, the "party may, on or before June 1, apply to

---

**3.** The Commission must prepare and notify the taxpayer of its assessment by May 1 of each year.

Utah Code Ann. § 59–2–201(1).

the commission for a hearing." When interpreting statutory language, we first look to its plain meaning. *State v. Larsen*, 865 P.2d 1355, 1357 (Utah 1993). The clear import of this provision is that if a county seeks a forum to voice grievances concerning an assessment performed by the Commission, it must lodge its objection "on or before June 1."

■ In this case, the Division's treatment of Questar's stored gas was part of its initial assessments. As such, the Counties and Daggett County had until June 1 of each of the relevant tax years to file objections regarding the stored gas. At the latest, the Counties and Daggett County should have objected by June 1, 1992, to challenge the application of the inventory exemption in the 1992 assessment. However, Daggett County did not file an objection until December 28, 1993, in attempting to include itself in the negotiations between Questar and the Division. And the Counties did not make their objection a part of the record until March 9, 1994. Thus, the Counties and Daggett County missed their opportunity to challenge unaltered portions of the initial assessments including the application of the inventory exemption. *Accord Maverik Country Stores, Inc. v. Industrial Comm'n*, 860 P.2d 944, 950 (Utah Ct.App.1993) (appeal dismissed because appellant filed request for review of order one day late); *Silva v. Department of Employment Sec.*, 786 P.2d 246, 247 (Utah Ct.App.1990) (per curiam) (same).

■ In addition, by objecting to a portion of the initial assessments, the Counties and Daggett County exceeded their scope of participation under section 59-2-1007. Subsection (4)(a) of that statute provides: "If the commission proposes to adjust an assessment which was made pursuant to Section 59-2-201, the Commission shall furnish notice . . . of its intent to adjust the assessment to . . . any county whose tax revenues may be affected by the decision. . . . The notice shall request the county to show good cause . . . *why the assessment should not be adjusted.*" (Emphasis added.) Plainly, this section reveals that after the Commission has proposed to adjust an assessment, the proceedings should focus on the proposed adjustments.

The extent of the affected county's role is to defeat the adjustments by showing that the assessment "should not be adjusted." *Id.* In this case, however, the Counties and Daggett County attempted to show the opposite—that the assessment *should be* adjusted. Following the Commission's decision to adjust the initial assessments, the Counties and Daggett County attempted to show that the initial assessments' treatment of Questar's stored gas *should* be adjusted. In this way, the Counties and Daggett County exceeded their role in the proceedings, and their objection regarding the taxability of the stored gas should have been rejected. We therefore affirm the Commission's approval of the inventory exemption's application to Questar's stored gas.

The next issue concerns whether the Commission erred in dismissing the Counties and Daggett County's objection that the settlement assessments could not be adopted. According to Daggett County and the Counties, the Commission could not approve the revised assessments since it had no assurance that they represented fair market value. *See* Utah Const. art. XIII, § 3; Utah Code Ann. § 59-2-201(1).

According to the record, the challengers are mistaken. In fact, the Commission had assurance that the assessments reflected fair market value. Mr. Eyre, the Division's appraisal expert, testified that the settlement assessments fell within a reasonable range of fair market value.·

■ However, even if Mr. Eyre had not so testified, the Commission properly dismissed the Counties and Daggett County's objection because the claimed error was not shown to be material. In *Beaver County v. Utah State Tax Commission*, we held that to show good cause under section 59-2-1007(4), counties had to do more than show "merely that the adjusted assessment, although based on accepted principles, was lower than the assessment the [c]ounties desired." *Beaver County*, 916 P.2d at 355, 358. Rather, the counties had to show that the revised assessment contained a "material error of fact or law." *Id.* at 21. In this case, the Counties and Daggett County did not demonstrate

that "but for the error, the valuation[s] would have been higher or lower." *Id.* Instead, they attempted to show good cause on the basis of an immaterial mistake. Therefore, the Commission properly treated Daggett County and the Counties' argument.

We next address Daggett County's first solo argument—that the Commission improperly forced it to abandon its contingent fee arrangement with Acca, its property tax advisor. Section 59–2–703(2)(c), which became effective on May 2, 1994, provides:

> Neither the commission nor a county may contract with a private firm or an individual under a contingency fee arrangement to assess property or prosecute or defend an appeal. An appraisal that has been prepared on a contingency fee basis may not be allowed in any proceeding before a county board of equalization or the commission.

Daggett County contends that the Commission applied this statute to force it to abandon its contract with Acca, which was executed on December 16, 1992. In this way, Daggett County argues, the Commission violated section 68–3–3 of the Utah Code, which prohibits retroactive applications of statutes not enacted to so apply, and article I, section 18 of the Utah Constitution, which forbids statutory impairments of contracts.

Questar and the Commission respond that this court should not address this issue because a reversal of the Commission's order could have no effect on the parties' rights. Respondents argue that the Commission ordered only that if Daggett County did not comply with section 59–2–703(2)(c), its involvement in the proceedings would be eliminated. The Commission did not, respondents continue, nor could it have, voided Daggett County's contract with Acca. *See* Utah Code Ann. § 59–1–201 (enumerating powers of Commission). And since Daggett County complied with section 59–2–703(2)(c) and was allowed to fully participate, respondents conclude, it was not substantially harmed and any opinion by this court would be purely advisory. In other words, Questar and the Commission contend that this issue is moot.

Respondents correctly point out that due to a long-standing judicial policy in Utah to avoid advisory opinions, we do not generally consider mooted questions on appeal. *Merhish v. H.A. Folsom & Assocs.*, 646 P.2d 731, 732 (Utah 1982); *State v. Stromquist,* 639 P.2d 171, 172 (Utah 1980) (per curiam). However, there are exceptions to the rule which allow a court, within its discretion, to reach the merits of a mooted issue. *See McRae v. Jackson,* 526 P.2d 1190, 1191 (Utah 1974). One exception is that a court may address a mooted issue where controversy continues to exist even after the issue has become moot. *See Wickham v. Fisher,* 629 P.2d 896, 900 (Utah 1981).

In this case, even if the issue concerning the propriety of the Commission's order is moot, we will resolve the issue due to its continuing controversy. Although our decision approving or disapproving the Commission's order can have no effect on the instant case, the order's precedential impact precludes Daggett County from participating in proceedings before the Tax Commission while a party to a contingent fee agreement with a property tax consultant. Thus, review of the Commission's order is appropriate.

The Commission's order reflects its interpretation of sections 59–2–703(2)(c) and 68–3–3 of the Utah Code, as well as article I, section 18 of the Utah Constitution. Because statutory and constitutional interpretation presents questions of law, *see Thurman,* 911 P.2d at 372, and section 59–2–703 does not "explicit[ly] grant ... discretion," we must "grant the commission no deference ..., applying a correction of error standard [of review]." Utah Code Ann. § 59–1–610(1)(b).

The validity of a contract is generally determined by the law in force at the time of its execution. *See Beehive Medical Elecs., Inc. v. Industrial Comm'n,* 583 P.2d 53, 60 (Utah 1978); *Quagliana v. Exquisite Home Builders, Inc.,* 538 P.2d 301, 308 (Utah 1975); *Washington Nat'l Ins. Co. v. Sherwood Assocs.,* 795 P.2d 665, 669 (Utah Ct.App.1990); 17A Am.Jur.2d *Contracts* § 254 (1991). When Daggett County entered into its contingent fee agreement with Acca, no law prohibited such agreements. It was only until section 59–2–703(2)(c) became effective

on May 2, 1994, that such contracts had become legally disfavored. Therefore, unless section 59–2–703(2)(c) was properly retroactively applied, Daggett County should have been entitled to the benefit of its contract.

 Section 68–3–3 of the Utah Code codifies the " 'long-standing rule of statutory construction that a legislative enactment which alters the substantive law or affects vested rights will not be read to operate retrospectively unless the legislature has clearly expressed that intention.' " *Roark v. Crabtree*, 893 P.2d 1058, 1061 (Utah 1995) (quoting *Madsen v. Borthick*, 769 P.2d 245, 253 (Utah 1988)). The best evidence of the legislature's intent is the plain meaning of the statute. *Nixon v. Salt Lake City Corp.*, 898 P.2d 265, 268 (Utah 1995). Because section 59–2–703(2)(c) contains no language reflecting an intent that this subsection should apply retroactively, we conclude that the legislature had no such intent. The Commission therefore erroneously applied section 59–2–703(2)(c) in this case.[4]

 The fifth issue is whether the Commission erred in finding that the Clay Basin storage facility had been fully valued and was reflected in the revised assessments. Because Daggett County challenges one of the Commission's factual findings, we must afford deference to the Commission's fact finding expertise and apply "a substantial evidence standard on review." Utah Code Ann. § 59–1–610(1)(a). Under such a standard, we will uphold the Commission's finding of fact if it is "supported by substantial evidence based upon the record as a whole." *Zissi v. State Tax Comm'n*, 842 P.2d 848, 852 (Utah 1992). " 'Substantial evidence' is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *First Nat'l Bank v. County Bd. of Equalization*, 799 P.2d 1163, 1165 (Utah 1990).

 The Commission's finding that the Clay Basin storage facility had been fully valued in Questar's revised assessments is amply supported by the evidence. Both Mr. Jackson and Mr. Eyre testified that Ques-

tar's leasehold interest in the storage facility was fully valued using the Division's appraisal methods. This testimony constitutes substantial evidence.

Notwithstanding this evidence, Daggett County argues that the storage facility was not listed as an asset in either Questar's records or the assessment notices that list assessed property. Therefore, Daggett County maintains, the facility's value to Questar was not included. However, Mr. Jackson explained why the records omit reference to the storage facility. Mr. Jackson explained that because Questar did not own the facility, it would have been inappropriate to list it as one of Questar's assets. We therefore uphold the Commission's finding that Questar's interest in the storage facility was fully valued in the revised assessments.

The sixth issue is whether the Commission improperly exempted Questar's custom-developed software as intangibles. Section 59–2–102(19) of the Utah Code provides that "intangibles" are not subject to assessment and taxation. In finding that Questar's software qualified as an intangible, the Commission engaged in statutory interpretation and made a conclusion of law. *See Thurman*, 911 P.2d at 372. For this reason, and because section 59–2–102 does not "explicit[ly] grant ... discretion," we must "grant the commission no deference ..., applying a correction of error standard [of review]." Utah Code Ann. § 59–1–610(1)(b).

The issue to be decided here is whether customized computer software is intangible property and therefore not subject to property taxation. In *Mark O. Haroldsen, Inc. v. State Tax Commission*, 805 P.2d 176 (Utah 1990), this court was confronted with whether mailing lists contained on magnetic tape or computer printouts were nontaxable because the compilation of the lists entailed a degree of personal service. *Id.* at 181. To resolve the issue, the court applied the "essence of the transaction" test, which "focuses on the primary purpose of the transaction." *Id.* at 178. If the costs of the property were primarily incurred for its intangible nature,

---

4. Because of our resolution of this issue under section 68–3–3 of the Utah Code, we need not

analyze the issue under article I, section 18 of the Utah Constitution.

for example, where personal services were performed in its development, rather than for its tangible nature, the property is deemed intangible and nontaxable. *Id.* at 178–79; *see also Thorne & Wilson, Inc. v. Utah State Tax Comm'n*, 681 P.2d 1237, 1238 (Utah 1984) (applying similar test); *McKendrick v. State Tax Comm'n*, 9 Utah 2d 418, 420–21, 347 P.2d 177, 177–78 (1959) (same); *Young Elec. Sign Co. v. Utah State Tax Comm'n*, 4 Utah 2d 242, 245, 291 P.2d 900, 901–02 (1955) (same). In explaining the analysis, the court offered an example of the test's application to computer programs. "Taxability of programs turns on the type and amount of the personal services used in devising a computer program, in particular, whether the program is customized or not. Computer programs may be taxed, depending on whether they are 'canned' or customized." *Mark O. Haroldsen*, 805 P.2d at 181.

■ In this case, we see no reason to apply the "essence of the transaction" test differently than did the *Mark O. Haroldsen* court in its computer program analogy. The Division and Questar submitted uncontradicted evidence that Questar's computer programs were customized rather than "canned" or mass-produced. Hence, the costs associated with the software were primarily for "[p]ersonal service rendered to customize a program." *Id.* Therefore, under the test applied in *Mark O. Haroldsen* and other cases from this court, the Commission correctly exempted Questar's customized computer programs as intangible property.

The final issue is whether the Commission improperly excluded Daggett County's ten exhibits at the hearing. Daggett County argues that the Commission's two grounds for excluding the exhibits—that Daggett County failed to exchange its exhibits with the Division as the Division requested and that the exhibits were irrelevant—do not support its decision. According to Daggett County, the Division already knew of the exhibits' contents and therefore the County's failure to provide copies before the hearing did not prejudice the Division. In addition, Daggett County maintains, the exhibits were relevant to show that Questar's stored gas was improperly exempted as inventory and that the Clay Basin storage facility and Questar's custom software were not valued in the revised assessments.

■ However, even if the Commission did err in excluding the exhibits, we are precluded from granting relief by section 63–46b–16(4) of the Utah Code. That section provides that in reviewing final agency action, an appellate court may grant relief only if "it determines that a person seeking judicial review has been substantially prejudiced." *Id.* § 63–46b–16(4). "In other words, we must be able to determine that the alleged error was not harmless. Thus, the aggrieved party must be able to demonstrate how the agency's action has prejudiced it." *Mountain Fuel Supply Co. v. Public Serv. Comm'n*, 861 P.2d 414, 423 (Utah 1993) (citation omitted); *see Savage Indus., Inc. v. Utah State Tax Comm'n*, 811 P.2d 664, 669 (Utah 1991).

Daggett County attempts to show prejudice only with regard to the exclusion of its third, fifth, and sixth exhibits. With regard to its remaining exhibits, it makes no argument, other than mere conclusory assertions, that the Commission's decision to exclude those exhibits was harmful. Because Daggett County has not shown that the Commission's exclusion of its remaining exhibits probably " 'affected the outcome of the proceedings.' " *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 796 (Utah 1991) (quoting *State v. Verde*, 770 P.2d 116, 120 (Utah 1989)), we affirm the Commission's exclusion of those exhibits.

Daggett County's third excluded exhibit contained partial copies of Questar's balance sheets for the relevant tax years. Daggett County contends that this exhibit's exclusion was prejudicial because it would have shown that Questar's stored gas should not have been exempted as inventory in the revised assessments. However, as we have previously held in this opinion, Daggett County was not entitled to challenge the taxability of Questar's stored gas. Therefore, the exclusion of this exhibit did not harm Daggett County.

■ Daggett County's fifth excluded exhibit contained the notices of centrally as-

sessed properties for the 1988 through 1992 tax years. Daggett County's sixth excluded exhibit listed some of Questar's investments in 1992. Daggett County argues that these documents, in omitting the Clay Basin storage facility and the custom software, would have shown that this property was not valued in the revised assessments. However, both Mr. Jackson and Mr. Eyre testified that the storage facility was fully valued in the revised assessments, and Mr. Jackson testified that the facility was appropriately omitted from Questar's records because Questar did not own it. In addition, Daggett County's claims of harm stemming from its inability to show that the software was improperly untaxed are unavailing. We previously held that it was properly untaxed pursuant to the exemption for intangible property. Thus, the exclusion of these exhibits did not harm Daggett County, and we therefore uphold the Commission's ruling.

### III. CONCLUSION

We conclude that (1) the Commission did not lose jurisdiction over Questar's appeals by failing to issue written decisions by the statutory deadlines; (2) the Counties' and Daggett County's arguments regarding Questar's stored gas should not be considered because they failed to object in a timely manner; (3) the Commission properly treated the Counties and Daggett County's argument that the revised assessments did not reflect fair market value because the challengers failed to show how the error impacted the assessments; (4) the Commission erred in applying section 59–2–703(2)(c) retroactively to force Daggett County to abandon its contingent fee agreement;[5] (5) the revised assessments did not exclude Questar's interests in the Clay Basin storage facility; (6) the revised assessments correctly exempted Questar's customized software from taxation under an exemption for intangible property; and (7) Daggett County failed to demonstrate prejudice stemming from the Commission's exclusion of its ten exhibits. We therefore affirm.

5. As stated above, this holding has no effect on the Commission's order approving the revised

ZIMMERMAN, C.J., and HOWE and DURHAM, JJ., concur in the opinion of RUSSON, J.

STEWART, Associate C.J., does not participate herein.

assessments and therefore does not merit a reversal of that order.